## HALSTED *vs.* MEEKER'S EXECUTORS.

1. Where a bill contains only a special prayer for relief, no other relief can be granted. And if the facts set forth in the bill would not authorize other relief, the prayer will not be amended.

2. It is a rule in equity, as well as at law, that parol evidence will not be received to explain or vary a will, or other written instrument, or to solve any patent ambiguity. But surrounding circumstances may be shown to explain what might seem an ambiguity on the face of a will.

3. A direction to invest twenty thousand dollars in some safe investment for a daughter, must be held to mean that sum *in money*, not in the stocks or securities in which the testator had invested the bulk of his estate, at their nominal value.

4. When a sum is directed to be invested for the benefit of a child of the testator, it must be invested at the end of a year from his death, and the child is entitled to the interest to accrue from the end of the year.

---

The bill in this cause was filed by the daughter of the testator, jointly with her husband, against the executors and others, for a construction of the will. The will directs the executors to place the sum of twenty thousand dollars of his estate at interest in some good and safe investment, for his said daughter. The testator, at the time of his death, owned a large amount of stock, paying large dividends, and was well acquainted with their character and value. The complainants insist that by the words twenty thousand dollars, the testator did not mean the dollars of currency, but dollars in stock, at its par value, and rely for this construction of the will, upon the fact of the large amount of stock owned by the testator, and that, when speaking of stocks, by the expression " one thousand dollars " in one or another particular kind of stock, he always meant that amount of stock at its par value, without regard to what the stock might be worth above par. They insist that the testator intended his executors to set aside the sum of $20,000 from some of his investments, or take a proportionate share from each of them.

The executors have filed their answer, denying any such intention upon the part of the testator, and insisting that $20,000 means simply and only so many dollars in the currency of the country, and that such must be the investment.

*Mr. Bradley,* for complainants.

*Mr. G. F. Tuttle,* for defendants.

The words of the will as to Mrs. Halsted's interest in the personal estate, are as follows : " I direct my executors hereinafter named, the survivors and survivor of them, to place the sum of twenty thousand dollars of my estate at interest in some good and safe investment, and to pay the net income or interest thereof semi-annually to my said daughter, &c."

We insist that these words are to be taken in their plain and obvious sense. "The words of the will, free of conjecture, are the means at law and in equity to collect the testator's intention." *Ram on Wills* 51, and cases cited.

The complainants suggest a division of the stocks, and it may be suggested that the words, " of my estate," strengthen this view. These words can have no such effect. The investment must, of course, be made from and out of the testator's estate. There is no other fund for it, and these words are almost superfluous.

We submit that the will does not warrant the executors in dividing the stocks as suggested, and that the practice of the Court of Chancery requires that this sum should be invested either upon bond and mortgage, or in stocks of the United States, or of this state. *Dimes* v. *Scott,* 4 *Russ.* 195; *Howe* v. *Dartmouth,* 7 *Ves.* 137.

Many of these stocks are of corporations in other states, and therefore beyond the control of this court; they are liable to loss by competition, accidents, frauds, and in various other ways, and the executors would be powerless, as also this court, to preserve the fund safe and intact, if it be held by the court that the complainant's *suggestion* is correct. The children of the complainants are not parties to this suit,

and would be free to prosecute the executors for any loss upon these stocks.

If the testator had meant to give to his executors stocks instead of money, for the benefit of Mrs. Halsted and her children, the proper and obvious course would have been to have given such stocks in express terms.

The testimony as to the verbal statements made by the testator shortly before and after the making of his will, is inadmissible. 1 *Jarman on Wills* 349 (marg. paging); *Boylan* v. *Meeker*, 4 *Dutcher* 274, 284, 285, 293; *Falkland* v. *Bertie*, 2 *Vern.* 333, referred to by Van Dyke, J., in *Boylan* v. *Meeker*, *p.* 308; *S. C.* 311, reference to 4 *Wash.* 262.

The admission of this testimony would allow the will to be altered or revoked by declarations of the testator, contrary to the requirements of the statute. *Nix. Dig.* 913, § 2. It should therefore be excluded.

The inventory of the estate is correctly made. Appraisement of stocks at par, intrinsically worth more, is incompatible with the oath of the appraisers required by the statute (*Nix. Dig.* 277, § 10), and with approved usage. *Norris* v. *Thomson's Ex'rs, Court of Appeals.*

·The complainants claim that Mrs. Halsted is entitled to her income and interest, from testator's death.

We insist that, at the earliest, her income commences at the expiration of a year from his death; if, indeed, it is not postponed to the time of the final decree in this cause, inasmuch as the executors have been precluded from investing the sum of $20,000 provided by the will for that purpose, by the complainants in this cause.

THE CHANCELLOR.

The bill in this cause is filed by Martha Adela Halsted, daughter of Samuel Meeker, deceased, jointly with her husband, Oliver S. Halsted, jun., against the executors of the will of her father, and the legatees in said will and the two codicils to it, for the purpose of having "such construction given to

Halsted *v.* Meeker's Executors.

said will and codicils as will carry out the intention and meaning thereof, and the validity of said will, and that the legacies may be satisfied in such way as this court shall deem just and proper."

These are the words of the only prayer for relief in the bill; it does not contain the general prayer. The only matter, then, which can be considered in this suit, is the construction of the will and codicils as they stand. The capacity of the testator, or any mistake in drawing the will or any part of it, cannot be considered here.

An amendment to the prayer of the bill would not change the matter in this respect, for there are no facts alleged on which such relief could be founded. The will, therefore, in this suit, must, with the codicils, be taken to be a valid will, drawn according to the intentions of the testator. The only question is as to the construction of it.

It is a settled principle, both at law and in equity, that parol evidence should not be received to explain or vary any will or other written instrument. And this rule applies with peculiar force to any instrument which, like a will, is by statute required to be in writing.

Where there is any doubt on the face of a will, the court will regard the surrounding circumstances under which it was made, and by them solve that doubt. And where there is a latent ambiguity, not appearing on the face of the will, but which arises from evidence by parol, and outside of the will, it may be explained by parol evidence.

In this case, there is no ambiguity on the face of the will. It directs the executors " to place the sum of twenty thousand dollars of my estate at interest, in some good and safe investment." There is no ambiguity about the word "dollars." If any word has a settled meaning at law, and in the courts, it is this. It can only mean the legal currency of the United States, not dollars vested in bonds or stocks, either at the market or par value, or at the original cost to the testator. And, as if to render it sure, the direction is to *place* twenty thousand dollars; it implies change, not to let it remain. The

expression is the "*sum of*," always applied to moneys, seldom or never to bonds, stocks, or other property, unless in adding up their money value; and the terms, "*in some*" good and safe investment, indicates an intention that the executors are to select. This direction is only to guide that selection.

The whole phraseology of the direction is inconsistent with the idea that he intended them to set aside the sum from any of his own investments, or to take a proportionate share from each of them.

The circumstances surrounding the testator and his property, relied upon to show that by the words twenty thousand dollars he did not mean the dollars of currency or of money value, are the facts that testator owned a large amount of stocks, was well acquainted with their character and value, and that he and others, when speaking of stocks, by the expression one thousand dollars in City Bank stock, or New York Central stock, meant that amount of stock at its par value, though one was worth fifty per cent. and the other thirty per cent. above par.

Take these facts as proved. No one can suppose from them that the testator, when using the term "dollars" to designate the amount of money he intended to give or offer, meant dollars in any specific stock. Had he agreed to purchase a house and lot for ten thousand dollars, no court would, from such proof, have held him bound to pay the Newark gas light stock or Ashtabula railroad stock, at par, when one was worth one hundred and forty, and the other two hundred per cent. And he cannot be held to mean this in his will when he gives a legacy of twenty thousand dollars.

The amount to be invested by the executors, must be twenty thousand dollars in legal money of the United States. It must be considered as having been invested at the end of one year from the death of the testator, from which time the complainants are entitled to interest on it. The executors are at liberty to invest the same on mortgage, and in bonds of this state, and of the United States.

The taxable costs, on both sides, including the cost of

printing the evidence, must be paid out of the estate. It is not a proper case for the allowance of a counsel fee to the complainants.