JOEL PARKER, executor &c. of Charles Parker, deceased,

*v.*

CHARLES P. GLOVER et al.

A testator ordered that his residuary estate (excepting two designated lots of land, as to which he gave his executor a discretionary power of sale) be converted into money, and that one-third thereof be held in trust for his daughter Mary for life, and then for the benefit of her children until the youngest should attain twenty-one, when the principal should be divided among them, share and share alike. He died in 1862. The two lots of land have never been sold. The testator owned certain stock in a bank, which investment was continued by his executor until 1873, when the bank failed and the stock became worthless. Mary had four children, two of whom, (daughters) died intestate after the testator and before their mother, leaving husbands, and one leaving issue and the other never having had any issue.—*Held*, that the one-third of the residue, excepting the two lots, was personalty ; that the gift to Mary's children was a vested remainder, and that the husbands of the two deceased daughters were entitled to those daughters' shares of such personalty, and that the executor was not, under the law of 1881 (*P. L. of 1881 p. 130*), which is retroactive, liable for the loss of the bank stock.

Bill for construction of will. On final hearing on bill and answers.

*Mr. Frederick Parker,* for complainant.

*Mr. Cortlandt Parker,* for the defendants M. P. and H. N. Gallup.

*Mr. Barker Gummere,* for C. P. Glover and F. Glover.

THE CHANCELLOR.

Charles Parker, deceased, late of Trenton, died in 1862. By his will, which was dated July 31st, 1858, after directing payment of his debts and funeral expenses, and giving to his son Joel a pecuniary legacy charged with two annuities, and giving those annuities, he ordered and directed (by the fourth clause of the will) that the residue of his estate, real and personal, except two houses and lots of his on Southard street, in Trenton, and his household furniture, be converted into money by his executor (his son Joel) within two years from his decease, and that the property, and the rents, interest and profits that might have accrued thereon, be then divided into three shares, one of which he gave to his son Joel, in trust, to pay over the rents, issues, dividends and profits thereof to his, the testator's, daughter Mary Ann, wife of James B. Glover, for and during her natural life, and, after her decease, to pay over such rents, interest, dividends and profits to her children, or for their use and benefit, at his discretion, until the youngest should come of age, when that third was to be divided among them, share and share alike. By the fifth clause he ordered and directed that the before-mentioned two houses and lots should constitute part of that third, and should be estimated to be worth, together, $3,000; and he thereby authorized his son Joel to sell them, at his discretion, at any time after his, the testator's, decease, and to receive the proceeds, and hold, appropriate and pay them, and the interest and profits thereof, upon the same trusts, and for the same purposes above set forth in regard to the third of which the prop-

erty was to form a part. Mary Ann Glover survived the testator, and survived her husband also. She died in 1885. At the time of the testator's death she had four children living, viz., Charles, Helen, Frank and Mary. Helen married Caleb A. Gallup, and died intestate in 1872, before the death of her mother, leaving her husband surviving, and her two children, Mabel and Herbert. Mary Glover, the other daughter of the testator's daughter Mary, married William Moore, and died intestate in 1877, before the death of her mother, and without issue (she never had a child born alive), leaving her husband surviving. The Southard street houses and lots have not been sold. The testator died seized of other real estate in Trenton besides the Southard street property. Part of the estate of the testator which came into the executor's hands was certain shares of the capital stock of the State Bank at New Brunswick, which shares were owned by the testator at the time of his death. The bank failed in 1873, and the stock was thus wholly lost.

The questions submitted are as to the devolution of the beforementioned third of the residue of the testator's estate given to the complainant in trust for Mrs. Glover, whether, under the will, the remainder over is to her children as a class, and therefore to those of them who were living at her death; whether the Southard street property is to be regarded, under the provisions of the will, as real or personal property, and whether the executor should, under the circumstances, be charged with the loss upon the above-mentioned bank stock.

The testator, by the fourth section of the will, directs absolutely a conversion of the property constituting the residue, with the exception of the Southard street houses and lots. The property which was thus to be converted must be regarded as personalty. The gift of the one-third of the residue in question was to his daughter Mary for life, with remainder to her children. The gift in remainder is of the rents, interest, dividends and profits until the youngest of the children shall come of age, when the *corpus* is to be divided among them, share and share alike. The gift in remainder vested at the same time as the life interest—at the death of the testator. That the gift was not to the children

36

as a class, is evidenced by the fact that it is to them as tenants in common. *Hawk. Wills 112; Herbert v. Post, 11 C. E. Gr. 278; S. C., 12 C. E. Gr. 540.* It follows, from what has been said, that the husbands of the deceased daughters of Mrs. Glover are entitled, upon taking out letters of administration, to the shares of their deceased wives.

The direction to convert the Southard street property was not absolute, but discretionary only. That property is expressly excepted from the positive direction to sell in the preceding section. The testator intended that it should, in its then condition, as land, be and continue part of the third given in trust for his daughter Mary, and should so go to her children, unless the trustee should think it best to sell it. There is no ground for holding that there was a notional conversion of it.

As to the shares of stock of the State Bank at New Brunswick, mentioned in the bill. The bill states, and it appears by the evidence, that the investment therein was made by the testator himself, and was continued by the executor. The executor acted in good faith, and in the exercise of a reasonable discretion, and the loss occurred without any fault on his part. A supplement, passed in 1881, to the orphans court act (*P. L. of 1881 p. 130*) provides that where an executor or trustee continues, in good faith, an investment made by the testator on bond and mortgage or in the bonds or shares of stock of any corporation, and such securities shall have come into the hands of the executor to be administered, and he, in the exercise of good faith and a reasonable discretion, may have (before the passage of the act) continued the investment, or may, after the passage of the act, continue the investment, he shall not be accountable for any loss by reason of such investment; provided, that the act shall not apply to cases where the deed of trust or will, or the court having jurisdiction of the matter, specially directs in what manner the trust fund shall be invested. It will be decreed that the trustee is not responsible for the loss in question.