SARAH E. HEISLER and SUSANNA D. MARCER, appellants,

*v.*

The Executors of the will of WILLIAM SHARP, deceased, respondents.

1. The ordinary may, in cases on appeal, where the subject-matter of the litigation is one over which he has original, as well as appellate jurisdiction, order new proofs to be taken, to be used in connection with the proof sent up from the court below, or if the proofs taken before the court below have not been preserved, he may order new proofs to be taken, and hear the appeal on such new proofs.

2. A legacy given by a debtor to his creditor, will, in the absence of any statement to that effect in the will, be presumed to have been given in payment of

Heisler *v.* Sharp.

the debt, if the legacy is as great or greater than the debt, but no such presumption will be made where the debt is contracted subsequent to the date of the will, or where the testator, by his will, directs that his debts shall be paid.

3. So long as an executor acts in good faith, and with ordinary discretion, and within the scope of his powers, his acts cannot be successfully assailed.

4. An executor may do anything within the scope of his powers, without risk of personal liability for the consequences of his acts, provided he exercises the care and judgment of a man of ordinary prudence and sagacity.

On appeal from the decree of the orphans court of Burlington county.

*Mr. Thomas E. French,* for appellants.

*Mr. Alfred Flanders,* for respondents.

THE VICE-ORDINARY.

The appeal in this case presents but a single question for review, and that is whether a credit claimed by the respondents, as the executors of William Sharp, deceased, and allowed by the court below, was rightfully allowed or not. The item in dispute is $560. This sum was paid to Edith A. Deuson for services rendered by her as nurse and housekeeper to the testator for a period of one hundred and twenty weeks, immediately preceding his death, at $5 a week. Miss Deuson exhibited her claim to the respondents under affirmation, and they, after full examination into its merits, paid it, and prayed allowance for it in their final account. The appellants excepted to its allowance, and the court below, after hearing proofs and argument, disallowed the exception and allowed the item. It is from the decree made on their exception that the appellants have appealed.

The case must be decided here on a somewhat different state of facts from that on which it was decided in the court below. The evidence taken before the orphans court was not preserved, and the appellants were in consequence obliged, in order to put their appeal in such condition that it could be heard on its merits, to obtain an order permitting new proofs to be taken. Such proofs have been taken, and the question of fact raised by the

Heisler *v.* Sharp.

appeal must be determined, not by the evidence which was before the orphans court, but by the new proofs which have been taken under the order of this court.   The new proofs are properly before the court and constitute the evidence which must control the decision of the question of fact involved, for the practice is se'tled, that the ordinary may, in cases on appeal, where the subject-matter of the litigation is one over which he has original, as well as appellate jurisdiction, hear the case on the proofs sent up from the court below alone, or permit additional proofs to be taken, and then hear the case on the additional proofs in connection with those sent up from the court below, or if the proofs taken in the court below have not been preserved, or are so imperfect that they cannot be used with safety, he may give the parties leave to take new proofs, and hear the appeal on such new proofs.   *Read* v. *Drake, 1 Gr. Ch. 78; Rusling* v. *Rusling, 8 Stew. Eq. 120; S. C. on appeal, 9 Stew. Eq. 603; Personette* v. *Johnson, 13 Stew. Eq. 173.*

The testator died January 31st, 1886.   Miss Deuson's claim covered the period intervening between October 11th, 1883, and the date of the testator's death.   She was a legatee under his will.   Besides a sewing-machine and some other chattels, he gave her a legacy of $2,000, payable within six months after his death.   The will contains no intimation that these gifts were intended as compensation for her services, nor that they were to go in satisfaction of a debt due to her.   Much the largest part of her claim accrued subsequent to the date on which the will was executed.   The will bears date January 16th, 1884.   There are cases where a gift by a debtor to his creditor will operate as a satisfaction of the debt, or put the creditor to his election, to either accept the legacy and forego his debt, or take his debt and forego the legacy.   The rule on this subject was stated by the Master of the Rolls, in *Talbott* v. *Duke of Shrewsbury, Prec. in Ch. 394,* as follows : "If one, being indebted to another in a sum of money, does, by his will, give his creditor a sum of money as great as or greater than the debt, without taking any notice at all of the debt, this shall, nevertheless, be in satisfaction of the debt, so that the creditor shall not have both the debt

and the legacy." *2 Lead. Cas. in Eq. 751.* This rule has been repeatedly recognized in this state. *Van Riper* v. *Van Riper, 1 Gr. Ch. 1; Petrie* v. *Voorhees, 3 C. E. Gr. 285; Rogers* v. *Hand, 12 Stew. Eq. 270; Russell* v. *Minton, 15 Stew. Eq. 123.* But it is regarded with great disfavor, and courts almost universally manifest a strong disinclination to enforce it. Consequently very slight circumstances are considered sufficient to take a case out of its operation. Thus, where a testator directs that his debts shall be paid, or charges them upon his real estate, the inference is that a bequest to a creditor is meant to be, as it appears, a gift, and not that it is to operate as payment. *2 Lead. Cas. in Eq. 821.* The testator in this case, by his will, directed that all his just debts be duly paid as soon after his decease as convenience and propriety would admit. The rule rests entirely upon presumption—it attributes to a testator, who gives a legacy to his creditor, an intention which he has neither expressed, nor intimated—and so cannot be applied to a case where there is nothing to sustain the presumption on which the rule rests. It is clear that it cannot be applied to this case, for it was impossible for such an intention, with respect to Miss Deuson's debt, to have existed in the mind of this testator, at the time he made his will, unless we say he had the prescience to know what was to take place in the future. It is plain that there can be no presumption of an intent to satisfy a debt by a legacy which the testator does not incur until after he has made his will. *2 Lead. Cas. in Eq. 825; 1 Pom. Eq. Jur.* § *535.* As the Master of the Rolls said, in *Talbott* v. *Duke of Shrewsbury, supra:* "Whatever is to be a satisfaction of a debt ought to be so in its creation, and at the very time it is given." This statement of the rule, with its limitations, renders it obvious, as I think, that the legacies given to Miss Deuson did not operate as a satisfaction of her debt, nor impose upon her the duty of making an election.

The case, on its merits, seems to me to be free from the least difficulty. The litigants are not Miss Deuson and the appellants, but the executors and the appellants. Miss Deuson has been paid, and has, therefore, no pecuniary interest in this controversy. The question in dispute is, whether the executors shall

Heisler v. Sharp.

be compelled to pay certain moneys to the appellants, which the executors have already paid to another person, but which the appellants say they should not have paid, because the person to whom the payment was made, had no right, by strict law, to the money. The appellants do not, however, say, that Miss Deuson did not render very valuable services to the testator, such as were, in consequence of his great age and impaired health, essential to his comfort, nor that the sum which the executors paid to her was so out of proportion to the value of her services as to evince wanton improvidence; but what they say is this: that during the whole period covered by Miss Deuson's claim she was under a contract to give her services to the testator at the rate of $2 a week; that the executors knew of the existence of this contract, and that Miss Deuson had been paid all she was entitled to under it; yet, in the face of such knowledge, and for the purpose of carrying out their own notions of what was just under the circumstances, they paid her claim. But no such contract has been proved. The proofs, on the contrary, serve rather to show that while Miss Deuson had, for many years, been a member of the testator's family, she was not there as an adopted daughter, or as a dependent, but as a servant working for wages, with no definite arrangement, however, as to the amount of compensation she should receive.

On the presentation of Miss Deuson's claim, a state of affairs arose which required the executors to act with caution. It became their duty to examine into the merits of the claim carefully, to see whether it was just or not, and, after getting all the facts obtainable respecting it, to exercise their best judgment as to whether it should be paid or not. They were not bound to exercise a faultless judgment. They were in a position where it was impossible for them to escape trouble and annoyance if the legatees were inclined to be litigious. If they paid without suit, the legatees could say that the claim was unfounded, and should not have been paid until established by a judgment at law, or if they had refused to pay and compelled the claimant to sue, then the legatees might have said that they should have paid without suit, and that, as they had causelessly resisted the payment of a

just claim, they should be required to pay the costs of the suit out of their own pockets. All that the respondents were required to do, was simply to do what any man of ordinary prudence and caution would, under like circumstances, have done. So long as an executor acts in good faith, and with ordinary discretion, and within the scope of his powers, his acts cannot be successfully assailed. No man is infallible; the wisest make mistakes; but the law holds no man responsible for the consequences of his mistakes which are the result of the imperfection of human judgment, and do not proceed from fraud, gross carelessness or indifference to duty. An executor may pay a debt which is just, though barred by the statute of limitations. *Purcel* v. *Purcel, 1 McCart. 514; Vreeland* v. *Vreeland, 1 C. E. Gr. 512.* He may also buy the peace of the estate which he represents by compromising a lawsuit or a doubtful claim. *Meeker* v. *Vanderveer, 3 Gr. 392 ; Rogers* v. *Hand, 12 Stew. Eq. 270.* Indeed, he may do anything within the scope of his powers, without the least risk of personal liability for the consequences of his acts, provided he exercises the care and judgment of a man of ordinary prudence and sagacity. That is the test which the courts are required to apply in all cases.

Judged by this rule, it seems to me to be entirely clear, that the respondents stand free, in this particular matter, from the least suspicion of wrong-doing. Their conduct was characterized by the highest good faith, and by more than ordinary prudence. They did just what it was their duty to do. If they had, on the contrary, refused to pay, and put the estate to the expense of defending a suit, which it now appears, would, on the facts before the court, in all probability, have resulted in the recovery of a judgment against them, there would have been much more reason to complain of their conduct than now exists. As it is, I think the appellants have suffered no grievance.

The decree appealed from must be affirmed, with costs.