FEDERAL RESERVE BANK OF PHILADELPHIA, complainant-appellant,

*v.*

FANNIE SLOTOROFF and MAX SLOTOROFF, defendants-respondents.

[Argued October 22d, 1934.   Decided January 10th, 1935.]

*Messrs. Cole & Cole,* for the complainant-appellant.

*Mr. George T. Naame* and *Mr. Vincent Haneman,* for the defendants-respondents.

The opinion of the court was delivered by

DONGES, J.

This appeal brings up a decree of the court of chancery dismissing complainant's bill which sought to set aside a conveyance by Fannie Slotoroff to her husband, Max Slotoroff, of property in Atlantic City as a fraud on creditors, or that it be decreed that the husband holds the property for the amount he advanced and that as to the balance of the equity the complainant, a judgment creditor against Fannie, be entitled to sell the property and take its debt, first paying the husband the amount of his claim.

It appears that some few years ago the husband conveyed this property to his wife; that the wife managed it until July 25th, 1933, when she conveyed it to her husband in consideration of the payment of approximately $2,450.   At

the time of the conveyance, and for a year or more prior thereto, Fannie Slotoroff was indebted to the Chelsea Second National Bank & Trust Company in the sum of approximately $3,150. She had no other property so that when she conveyed this to her husband, she divested herself of all her apparent assets. The property had been subject to a building and loan association mortgage of $20,000, which had been reduced to about $8,400 at the time of the conveyance, so that the husband by assuming this and making the payment above mentioned, paid in all about $11,000. There was testimony from qualified real estate men on behalf of the complainant that the property was worth about $20,000 and from the experts produced by defendants that it was worth about $14,000.

The vice-chancellor found that there was no evidence of fraud; that the property was conveyed for a fair consideration; and that, therefore, under the Fraudulent Conveyances act the complainant was not entitled to any relief, and he dismissed the bill.

It has been held in *Horton* v. *Bamford, 79 N. J. Eq. 356,* that equity will relieve a creditor where it appears that one takes a conveyance with knowledge that such conveyance will render the debtor grantor insolvent, and where the consideration is less than an adequate one. This is not upon the theory of fraud between the parties, but upon the assumption that the grantee must not close his eyes to the situation as regards other creditors and have the advantage himself of a bargain which will cut out *bona fide* creditors. This is quite apart from the provisions of the Fraudulent Conveyances act and is based upon a jurisdiction in equity which is very broad. This is dealt with in *Horton* v. *Bamford, supra,* and other cases, and is based upon the theory that one may not close his eyes to the situation created by his conduct, and accept undue benefit to the disadvantage of creditors. That case has been approved in this court in an opinion by Mr. Justice Swayze. *Semenowich* v. *Melnyk, 93 N. J. Eq. 615.* In that case, and in other cases, it has been held that where one pays an inadequate consideration, it will be decreed that he holds the property for his own benefit and the benefit of creditors, and upon

his being indemnified (in some cases a bond of indemnification was required) the property will be sold and the grantee paid first and any balance delivered to the creditor. There seems to be no doubt about this practice, and the only doubt is about the application of this equitable principle to the facts in this case.

When it is considered that this property is valued by all the experts at substantially more than the amount the husband paid for it, including encumbrances, and that he must have known, when the wife divested herself of all that she possessed, that an existing debt, of which he had knowledge, would be cut out, it would be inequitable to permit him to hold the property. It is not necessary to find that the husband participated in a fraud. We conclude, upon the evidence presented, that the decree must be reversed and the case sent back to the court of chancery to have a decree entered that the property be sold upon proper indemnification of the husband, and that he be first paid the amount due him, and that any balance go to the satisfaction of appellant's judgment.

The decree is, therefore, reversed.

PERSKIE, J. (dissenting).

Mr. Justice Heher and I conclude, from our study of the proofs in this case and the basic and broad equitable principles applicable thereto, that the purported conveyance by the wife to the husband, not only excites our suspicions (*Reed* v. *Tilton, 90 N. J. Eq. 42*) but satisfies us that it was not made in good faith.

We are not unmindful of the fact that settlement for the conveyance took place at the offices of a title company. The reason is quite obvious. It gave the parties the opportunity of having a disinterested witness, who could and did, as here, testify as to the passing of the purchase price. But an analysis of the reasons assigned by the husband which motivated his alleged purchase of the property; the explanation of the advance of the moneys, by his sister-in-law, necessary to make the settlement; the failure of the wife to testify as to this conveyance, as a result of which she divested her-

self of all she possessed, or to explain her disposition of the proceeds thereof, together with all other proofs, convinces us that the conveyance was a mere subterfuge; it was in fraud of her creditors.

Equity can and should grant full and complete relief to the appellant in the premises. We do not think that the husband is entitled to the relief granted him by the majority. Accordingly we vote for an unqualified and complete reversal of the decree below.

*For affirmance*—THE CHIEF-JUSTICE, LLOYD, CASE, BO-DINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 10.

*For reversal*—HEHER, PERSKIE, JJ. 2.