Virginia and Louise Griggs, as infant cestuis under a trust created by the codicil to the last will and testament of their grandfather, the late Governor John W. Griggs, seek to surcharge The Paterson National Bank, as trustee, for its failure to have disposed of certain shares of its own stock which it held in trust for them and all of which have greatly depreciated in value.
After making certain specific bequests and giving a life interest in certain of his property to his wife, the said testator, by *Page 74 
his last will and testament dated March 24th, 1926, divided all the rest and residue of his estate into seven equal parts, and, by the fifth clause thereof, gave one of said parts outright to each of six of his children, John Leavitt Griggs, Leilia Huntoon, Constance Griggs, Daniel Griggs, Elizabeth Griggs Cooke and Janet Griggs, and the remaining part to The Paterson National Bank, in trust, however, for his other child, Helen.
By a codicil executed November 26th, 1926, the testator, after stating that his son, Daniel, had, since the making of his said will, died leaving two children, Virginia and Louise Griggs, directed that that share of his estate which would have gone to his said deceased son, had the latter survived him, be now given to The Paterson National Bank in trust, however,
"to have, hold, manage and invest the same, and receive and collect the income thereof, and to devote such income to the support, maintenance and education of the said Virginia and Louise in equal portions, and when Virginia shall reach the age of twenty-one years to pay her one-half of the principal orcorpus of such trust fund, and continue to pay the income of the other half for the benefit of Louise until she reaches the age of twenty-one years, and then to turn over to her such remaining one-half of the principal or corpus of such trust fund."
This will, together with the codicil thereto, was duly admitted to probate on December 9th, 1927, after which The Paterson National Bank and Elizabeth P. Griggs, the testator's wife, qualified as the executors thereunder. Thereafter the executors turned over to this trustee, as a part of the trust created under the codicil for the said infant cestuis, one hundred and forty-two of the one thousand shares of the capital stock of The Paterson National Bank of which the testator died possessed and all of which shares were then inventoried at the value of $300 per share.
Intermediate accounts, covering each of the periods from (a) February 4th, 1928, to November 30th, 1931, (b) November 30th, 1931, to October 6th, 1934, and (c) October 6th, 1934, to October 15th, 1936, were thereafter filed by the trustee. *Page 75 
It was only to the last of these accounts that the infantcestuis, through their guardian, Rosa M. Spaens, filed exceptions and, in addition thereto, a petition that the trustee be surcharged with the shrinkage in principal and income resulting from the depreciation of the stock in question.
Based upon the principles enunciated in Estate of BernardShanley v. Fidelity Union Trust Co., 5 N.J. Mis. R. 783;138 Atl. Rep. 388; McAllister v. McAllister, 120 N.J. Eq. 407, andGates v. Plainfield Trust Co., 121 N.J. Eq. 460;191 Atl. Rep. 304; affirmed, 122 N.J. Eq. 366; 194 Atl. Rep. 65, the infantcestuis here contend that the trustee violated its duty of loyalty to them by holding its own stock as a part of the trust which the testator had established for them. But the fallacy in that contention lies in the fact that in the instant case the trustee did not, as did the trustee in each of the cases cited, acquire, by purchase or exchange, any of the stock, the retention of which is now assailed. On the contrary, the stock investment here under consideration was one that was made not by the trustee but by the testator himself; and which, in accordance with the terms of his will, his executors had merely allotted and transferred, in specie, to the trustee as a component part of the trust which the testator had created for the benefit of the said infant cestuis. Because of these facts alone the case at bar is brought within the rule enunciated in the recent case of In reRiker's Estate, 124 N.J. Eq. 228; 1 Atl. Rep. 2d 213, rather than, as was here insisted on behalf of the infantcestuis, within the condemnation of the principles enunciated in Estate of Bernard Shanley v. Fidelity Union Trust Co.,108 N.J. Eq. 564; 138 Atl. Rep. 388.
It is also insisted on behalf of the infant cestuis that the trustee was negligent in the administration of the trust and the retention of the stock in question. Aside from the seventh clause of his will under the provisions of which the testator expressly authorized and empowered the trustee to exercise its own judgment and discretion as to the type of securities in which the trust funds should be invested, and which, as therein stated, did not need to be limited to those securities *Page 76 
specified for the investment of trust funds by the laws of this state; the trustee, having admittedly received the said stock from the testator's executors as a part of the corpus of the trust created by, and allotted in accordance with, the provisions of his will, was, under the provisions of R.S. 1937, 3:16-12, not only authorized and empowered, in the exercise of good faith and reasonable discretion, to continue said stock investment, but also expressly exempted from liability for any loss resulting from any such continuance on its part.
Moreover a careful examination of the proofs here adduced fails to disclose any evidence of negligence on the part of the trustee either in the administration of the trust or in the retention of the stock in question. All that the law exacted of our trustee in the administration of its stewardship was an obligation of faithfulness to the cestuis and a duty to exercise ordinary care, prudence and diligence. Smith v. Jones, 89 N.J. Eq. 502;104 Atl. Rep. 380. So long as it acted in good faith, with ordinary care, caution and discretion and within the scope of its powers, our trustee cannot, and will not, be held liable for the consequence of its mere mistakes, even if such there were, resulting from mere errors of judgment and not proceeding from any fraud, gross carelessness or indifference to duty on its part. Monroe v. Osborne, 43 N.J. Eq. 248; 10 Atl. Rep. 267;Heisler v. Sharp, 44 N.J. Eq. 167; 14 Atl. Rep. 624; affirmed,45 N.J. Eq. 367; 19 Atl. Rep. 621; In re Leonard, 107 N.J. Eq. 235; 152 Atl. Rep. 243; In re Corn Exchange National Bank,109 N.J. Eq. 169; 156 Atl. Rep. 455. A similar rule in regard to retention by trustees of investments made by the testator has been enacted by the legislature of this state into a statute.R.S. 1937, 3:16-12. Nor does the mere fact that the officers and directors of our trustee are stockholders in it, and retained, as a part of the trust fund the shares of stock now questioned, during or after a declining market, give rise, ipsofacto, to a presumption of bad faith so as to render it liable for the resulting depreciation or loss.
For more than a quarter of a century, the stock in question enjoyed a steady gradual advance in its earning and dividend *Page 77 
power and was regarded as a stable and high grade investment. True to its record, it continued to rise in market value and dividend payments for several years even after the advent of the present economic depression. Considered in the light of that record of performance, the directors of the trustee-bank, called in its behalf, testified, with unanimity, that they considered the now questioned stock as both a proper and desirable investment for the here considered trust fund. The sincerity of their thus expressed opinion and conviction is best attested by the fact that they themselves constantly increased their own personal holdings of this very same stock during the entire period covered by the bank's present trusteeship.
With the exception of but two forced sales of pledged stock and small sales in two or three instances by officers on the occasion of their leaving the employ of the trustee-bank, not one of its directors sold any of the stock owned by them personally in the trustee-bank. The undisputed testimony, on the contrary, shows that the trustee-bank's president increased his own personal holdings from seventy or eighty shares of said stock in 1927 to well over one thousand of said shares at the time of the hearing, he never having sold any of it; while Mr. Jordan increased his own personal holdings from seventy-five to two hundred and fifty shares of said stock, and Mr. Fayerweather increased his own personal holdings from fifty to two hundred and fifty shares of said stock.
The market value of said stock continued to rise despite the 1929 economic depression, reaching an all high market value of $475 per share in 1930. Right up until the end of 1933, when dividend payments were first stopped, the trustee-bank had an operating profit, which for the year 1933 was $292,000.
Notwithstanding this, a rapid fall or decline in the value of its stock set in after the banking holiday of 1933. Of such swift development was it, that the trustee-bank's stock, the last recorded sale of which was at $325 per share in 1931, brought but the sum of $73 per share in 1933. During this period of acute financial depression, even the best of securities *Page 78 
were visited with swift and precipitous declines in value. Yet in the exercise of their best judgment, not a single one of the said directors of the trustee-bank sold any of their own personal holdings of its stock during this entire period of time or even thereafter, because, as they testified, of their faith in the said stock and in its ultimate ability to retrieve the sudden shrinkages wrought in its value.
And as they, in the exercise of their best judgment, acted for themselves in regard to their own personal holdings of said stock, so, too, did our trustee, by and through its directors, act with respect to the said stock which it held for the infantcestuis. In so doing, under the circumstances and conditions then confronting it, our trustee fully and fairly discharged its duties and obligations to the infant cestuis. For it to have done otherwise would probably have been to render itself liable to be surcharged for a swift, but what then hopefully appeared to its directors to be a recoverable and abnormal shrinkage, if and when in fact such was retrieved. In not then selling, it merely did as practically all other holders of that stock investment did. To surcharge it for so doing would unquestionably be tantamount to exacting of it the exercise of a far greater degree of care, caution and foresight than would have been exercised by the average ordinary prudent and cautious person under similar circumstances. This, of course, the law does not and will not require of our trustee.
Nor is there any proof that our trustee did not give diligent and careful consideration to the administration of its trust. On the contrary, the evidence is undisputed that the trust was discussed and considered at practically every meeting of its directors who were always of the opinion that the said stock should be retained. Furthermore, there is no suggestion that the retention of the securities was not the result of the honest and unselfish judgment of our trustee that that was the wisest course to pursue. It held said stock, as did its directors their own personal holdings of that stock, for the better prices which it and they felt the stock would eventually bring. It exercised its best judgment and circumspection *Page 79 
in determining whether to sell or retain the very stock which the testator himself had acquired and held as an investment. Even if it could then have been definitely said and determined that it erred in its judgment, nevertheless that alone could not render it now liable to being surcharged. In re Cross, 117 N.J. Eq. 429; 176 Atl. Rep. 101; Coddington v. Stone, 36 N.J. Eq. 361;Parker v. Glover, 42 N.J. Eq. 559; 9 Atl. Rep. 217; People'sNational Bank, c., v. Bichler, 115 N.J. Eq. 617;172 Atl. Rep. 207; In re Ward, 121 N.J. Eq. 555; 192 Atl. Rep. 68; affirmed,121 N.J. Eq. 606; 191 Atl. Rep. 772.
The exceptions will be overruled, the account will be allowed and the petition to surcharge will be dismissed. Decree accordingly. *Page 80