13 N.J. Super. 222 (1951)
80 A.2d 311
IN THE MATTER OF THE ESTATE OF ISAAC B. BEALES, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued April 16, 1951.
Decided April 24, 1951.
*223 Before Judges McGEEHAN, JAYNE and Wm. J. BRENNAN, JR.
Mr. James A. Major argued the cause for appellant (Messrs. Major & Carlsen, attorneys).
Mr. Warren Dixon, Jr., argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
Mr. Isaac B. Beales died testate on October 14, 1944, leaving him surviving two daughters, Ruth M. *224 Brower and Margaret A. Beales. The will was admitted to probate and pursuant to the nomination expressed in the will, letters testamentary were issued to the respondent, Bertrond A. Weber, who thereupon qualified as executor and assumed the administration of the decedent's estate.
The executor submitted his final account to the Probate Division of the County Court of Bergen County for allowance and settlement. Margaret Beales interposed an exception to its approval. On September 22, 1950, a judgment was entered in the County Court dismissing the exception and adjudicating that "the said account be in all things allowed as reported." The present appeal implicates the propriety of that judgment.
One cannot attain a comprehensive understanding of the basic controversy without some familiarity with the antecedent chapters of its history.
The decedent was the owner of a residential property designated as No. 356 Harrison Avenue, Hasbrouck Heights, New Jersey, in which he resided with Mr. and Mrs. Frank Parker during a period of six years before his death. Their associations may be characterized as constituting a family circle.
In June 1944, the testator suggested to the Parkers that they purchase the property for the sum of $5,000. On July 22, 1944, less than three months before his death, the testator accepted a check from Mr. Parker for $100 and subscribed to the following memorandum:
 "July 22nd 1944
Received of Frank Parker
One Hundred ............................................. Dollars
a Down Payment on purchase of House & Land at 356 Harrison Avenue
Hasbrouck Heights New Jersey
Total Cost $5000.00
$100.00 I.B. BEALES"
The excerpt from a contemporaneous communication of the testator to his daughter Ruth, here reproduced, reflects some illumination upon the considerations which obviously motivated the testator.
*225 "Dear Ruth
Last Saturday when you came over to 356 I had verbally sold the house to Frank Parker for $5,000.00 and after you left we drew up an agreement to that effect. You may think that is cheap but remember the long time (over six years) that I have lived there with the best of bed, of food, and that surely is worth something.
I know you will find it easy to settle the estate with Bert and be kind to Peg she has had a rough life. I wish I could have changed but she would not. I am sorry for Peg and hope the future will be brighter than the past has been. I have always loved Peg dearly and wish I had acted differently on several occasions. I have another and wish that I had you, It's happy end"
The memorandum and the check endorsed by the testator were subsequently exhibited to the executor, who seems to have been influenced by the manifestation of the testator's intention. But let him speak for himself:
"A. I decided that as executor of the estate I would be carrying out the testator's wishes by doing just what these documents suggested. I entered into the contract with Mr. Parker because I thought it would, as executor, legalize this condition. I felt that if I didn't sell this property to Mr. Parker that Mr. Parker would have just cause for a suit against me that this was enforcible.
Q. And the price mentioned in these documents was five thousand dollars? A. Was five thousand dollars."
It is of some significance to relate that the executor is a jeweler and not specially educated in the discriminations of the law.
The testator's will which was executed by him on February 24, 1939, contained the following direction:
"The property at 356 Harrison Ave. Hasbrouck Hts. N.J. to be sold and the proceeds derived, divided equally between my daughters Ruth M. Brower and Margaret A. Beales."
In the existing circumstances the executor entered into a contract with Mr. Parker for the sale to him of the property at the price of $5,000. The United States Mortgage and Title Guarantee Company of New Jersey declined to guarantee the *226 title unless the two daughters of the testator joined in the deed of conveyance. Margaret refused to do so.
In that situation the executor filed a bill of complaint in the former Court of Chancery in which, inter alia, he alleged the contract into which he had entered for the sale of the property for the price of $5,000 and the pertinent provision of the will, and prayed that the court "declare that the complainant, Bertrond A. Weber, has an implied power of sale and can sell the lands and premises described herein * * *" A decree was advised that "under the provisions of the Last Will and Testament of said decedent, and under the provisions of the said contracts hereinabove recited (contracts of decedent and executor) that the said Bertrond A. Weber, Executor of the Last Will and Testament of said decedent, be and he hereby is directed to execute and deliver to said Frank Parker his said deed" for the No. 356 Harrison Avenue property upon payment of the sale price of $5,000. (Parenthetical insertion and emphasis ours.) Margaret A. Beales was an answering defendant in that cause and prosecuted an appeal from the decree, in the Court of Errors and Appeals. 140 N.J. Eq. 423 (E. & A. 1947).
The essential signification of the opinion rendered by the appellate court is revealed by the following selected quotations:
"The Vice-Chancellor based his opinion upon his finding that there was a memorandum made by the estator from which he spelled a valid contract to sell to the defendant-respondent Frank Parker and that there arose from such special circumstances the power to sell by implication. While we concur in the result, we prefer to rest our opinion upon a different basis, namely that in the construction of the will of the decedent, to give effect to the apparent intention and purpose of the testator, there arises an implied power of sale in the executor to sell and convey the premises hereinafter referred to. In the bill of complaint no mention was made of the action of the decedent with respect to the premises and the prayer for relief was based upon the allegation of an implied power of sale in the executor by means of construction of the will.

* * * * * * * *
We hold that there is an implied power of sale by the executor."
*227 The entry of a revised final decree thereupon eventuated on October 10, 1947, in the Court of Chancery which after a recital of the antecedent proceedings on appeal ordered, adjudged, and decreed "that said Executor be and he hereby is directed to execute and deliver to Frank Parker his said deed * * * upon payment of the sale price of Five Thousand ($5,000) Dollars, upon which One Hundred ($100) Dollars has been paid on account thereof, all in accordance with the provisions of a certain contract of sale entered into between the said Executor and said Frank Parker." The file in the cause in Chancery from which much of the foregoing information is derived was admitted in evidence in the accounting proceedings here under review.
The sale was accordingly consummated and the executor in accounting for the proceeds encountered the exception interposed by the present appellant accusing him of the failure to "exercise reasonable care and skill" in conveying the property for $5,000 instead of for a higher price.
In view of the peculiar characteristics of the events to which reference has been made, a consideration of the doctrine of estoppel by record naturally intrudes. The bill of complaint in Chancery was not one of the conventional type which seeks merely a construction of the will with respect to the power of the fiduciary, but one which also alleged the contract into which the executor had entered and its terms, and presented to the court evidence of the decedent's ante mortem intentions, the contract of the executor, and the provision in the will, and in this particular requested the determination of the court concerning the power of the executor to perform the specified contract which was in all respects conformable to the contemplations of the testator. The question noticeably emerges  could not the present appellant, who was a party to that cause, have by way of defense averred that the contract specifically mentioned in the bill of complaint should not be consummated by the executor by reason of the inadequacy of the selling price?
It is the well established rule that where the issue is *228 identical in both actions, the judgment in the prior action is normally final between the parties as to all defenses which were or could have been set up in the earlier suit. It is not essential that the action in which the judgment is rendered and that in which it is interposed as an estoppel shall be of precisely the same kind and in quest of the same form of relief. Inherent in the doctrine are those considerations of justice designed for the protection and security of rights and for the preservation of the repose of society. It is contrary to justice to permit a person to be twice vexed for the same cause. City of Paterson v. Baker, 51 N.J. Eq. 49 (Ch. 1893); In re Walsh's Estate, 80 N.J. Eq. 565, 570 (E. & A. 1909); Phillips v. Phillips, 119 N.J. Eq. 497 (E. & A. 1936).
In the present case decisive reliance need not be placed on the doctrine of estoppel.
The prescribed measure of duty requires a fiduciary to exercise (expressed in the composite verbiage of the cases) that degree of care and caution, skill, sagacity, and judgment, industry and diligence, circumspection and foresight that an ordinarily discreet and prudent person would employ in like matters of his own and in the same or similar circumstances. In re Ebert, 136 N.J. Eq. 123, 126 (Prerog. 1945), and citations.
The realities of the situation of the executor should not be ignored. Here the Court of Chancery by its initial decree directed him "to execute and deliver" the deed for the stated purchase price. The Court of Errors and Appeals said "we concur in the result. * * *" The revised final decree likewise "directed" him to complete the sale. Does the law then render him harborless? Must he avoid Scylla by obeying the decree and thereby collide with Charybdis sustaining the injury of a surcharge, or should he sail clear of the latter and collide with the former and be punished for his contumacious seamanship? Obviously the channel between them was too narrow to enable him to escape both.
Our courts in reviewing the conduct of fiduciaries have frequently reiterated the observation that "no man is infallible; *229 the wisest make mistakes; but the law holds no man responsible for the consequences of his mistakes which are the result of the imperfection of human judgment, and do not proceed from fraud, gross carelessness or indifference to duty." Heisler v. Sharp, 44 N.J. Eq. 167 (Prerog. 1888), affirmed 45 N.J. Eq. 367 (E. & A. 1889); Smith v. Jones, 89 N.J. Eq. 502 (Prerog. 1918); In re Leonard, 107 N.J. Eq. 235 (E. & A. 1930); In re Corn Exchange National Bank, 109 N.J. Eq. 169 (E. & A. 1931); Willson v. Tripp, 124 N.J. Eq. 45 (Ch. 1938), in all of which the language of Vice-Ordinary Van Fleet in the Heisler case reverberates.
It is not necessarily to be inferred that the respondent-executor in the present case made a mistake. It is evident that he conceived it to be his duty to effectuate the inter vivos agreement of his testator. It is not evident that he was actuated by any ulterior motive.
In any aspect of the various features of the case, it was certainly incumbent upon the appellant as the exceptant to the executor's account to prove by a fair preponderance of the credible evidence that the sale price was so grossly inadequate as to generate the conclusion that the executor acted in the transaction with that degree of carelessness and imprudence which warrants the imposition of a surcharge upon him. The evidence relevant to that issue is examined.
There were but two real estate experts who expressed their opinions of the value of the property. Mr. Smith of Hackensack, who was called by the exceptant, made an exterior inspection of the property in February 1946. He had no knowledge whatever of the interior condition of the house and the state of its internal equipment. He supposed the building to be from 37 to 40 years old. He estimated its minimum value to be in 1946 about $10,000, and in 1945 from 10% to 15% less because of the flexible market differential.
In conspicuous contrast is the testimony of Mr. Allen, who is engaged in the sale of real estate in Hasbrouck Heights and had visited the interior of the house as many as 20 *230 times. The building was insured through his agency in 1944 in the amount of $3,500. The property was listed with him by the testator in 1937 for sale at the price of $3,700.
His description of the property as he observed it in 1944 may well be quoted:
"The house was badly in need of repair all over. The shingles on the outside were weathered, without paint. The plaster was down in one of the rooms. The heating system  I would say the heating boiler was what struck me mostly was the fact that it was wired up in very dilapidated condition. The doors were wired on to keep it in place. There were evidences of water in the cellar. There were some sheds that evidently were at one time a chicken house or such, over to one side of the property; that was all down. The garage I remember was falling down. There was no evidence of much of a driveway in there in the property. There was a garage there, that's all.
Q. What about the bathroom? A. Well, the bathroom evidently had been put in there after the house was constructed. The bathroom was so small and an undersized tub would have to be put in there in order to fit in; the standard five-foot tub would never fit in that bathroom.
Q. What was the condition of the plumbing? A. The condition of the plumbing was rather poor. It was naturally in the shape that all fifty-year-old houses were.
Q. How old was this house? A. A minimum of fifty years."
The foregoing description of the house was corroborated by additional testimony. Mr. Allen stated that the fair market value of the premises during 1944 and 1945 was between $4,500 and $5,000. The testimony of Mr. Allen is obviously the more informational, the more comprehensive, hence the more trustworthy.
The subsidiary overture of the appellant that the payment of the counsel fees heretofore allowed and directed to be paid out of the assets of the estate should now be visited upon the executor personally is without merit. The appellant has occasioned all of the litigation. Counsel for the testator's other daughter, Ruth M. Brower, in the accounting proceeding, stated that he desired on her behalf "to place upon the record our satisfaction with the work done by this executor. He was a good and trusted friend of the *231 decedent and we feel he did everything he possibly could to safeguard the interest of the estate."
Our consideration of the present appeal with all of its ramifications leads us to the conclusion that the judgment of the Bergen County Court should be affirmed.