In the matter of the appeal of the CORN EXCHANGE NATIONAL BANK AND TRUST COMPANY from the decree of the prerogative court affirming an order of the orphans court of the county of Atlantic allowing the account of the Corn Exchange National Bank and Trust Company, executor of the estate of Winfield S. Nice, deceased, and adjudicating the exceptions filed thereto.

[Argued May 21st, 1931. Decided October 19th, 1931.]

*Mr. Lewis Starr,* for the appellant.

*Mr. Samuel Morris,* for the respondents, exceptants to final account.

The opinion of the court was delivered by

PARKER, J.

The question in controversy is adequately stated in the brief of counsel for appellant, as follows:

"This appeal is for the review of the final decree, in the prerogative court, advised by Vice-Ordinary Ingersoll, sustaining a decree of the Atlantic county orphans court, surcharging the appellant, as executor of the last will and tes-

tament of Winfield S. Nice, deceased, for the sum of $30,953, with respect to the final accounting, of the appellant, as executor.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"The orphans court sustained exceptions, which had for their object the surcharging of the appellant, arising, as it was claimed by the exceptants, by reason of the manner in .which the executor had handled the estate, and particularly with regard to an application made in the United States district court for the eastern district of Pennsylvania, in conjunction with one stockholder, for the appointment of a receiver of the Nice & Schreiber Company, in which practically all of the stock was owned by the estate.

"The orphans court held that the executor was grossly negligent .and indifferent in the management of the estate, when it participated in the application for the appointment of a receiver, in Pennsylvania, and surcharged it in an amount which represented the administration expenses of the receivership, based upon receiver's fees and receiver's counsel's allowances, &c., made by the federal court. On the appeal to the prerogative court, the action of the orphans court was sustained, for the reasons given by the orphans court judge.

"The orphans court further held that, by reason of the conduct of the appellant, it should not be paid further commissions or receive any allowance for counsel fees."

We have examined the case with care, in the light of the very satisfactory arguments made and briefs submitted, and conclude that the decree surcharging the appellant executor was erroneous.

Before proceeding to the facts, it may be well to restate the principles applicable in this class of cases, as laid down by the late Vice-Chancellor and Vice-Ordinary Van Fleet, one of our ablest judges, in *Heisler* v. *Sharp, 44 N. J. Eq. 167*. In that case the executor allowed and paid a claim for services as nurse and housekeeper, which the appellants claimed should have been repudiated and allowed to go to suit. The vice-ordinary said (at p. 172): "All that the

respondents [the executors] were required to do was simply to do what any man of ordinary prudence and caution would, under the circumstances, have done. So long as the executor acts in good faith, with ordinary discretion and within the scope of his powers, his acts cannot be successfully assailed. No man is infallible, the wisest make mistakes, that no man is responsible for the consequences of his mistakes which are the result of the imperfection of human judgment, and do not proceed from fraud, gross carelessness or indifference to duty."

This language has more than once been quoted as correctly stating the law on this point. *Smith* v. *Jones, 89 N. J. Eq. 502* (at *p. 506*); *In re Leonard, 107 N. J. Eq. 235, 236, 237,* the latter case being in this court. A similar rule in regard to retention by executors of investments made by the testator, has been enacted into a statute (*Comp. Stat. p. 2271 pl. 34; P. L. 1899 p. 236; P. L. 1881 p. 130*) providing that "whenever * * * such executor * * * may, in the exercise of good faith and reasonable discretion, have continued such investment, or may hereafter continue the same, he shall not be accountable for any loss by reason of such continuance." And in *Beam* v. *Paterson Safe Deposit and Trust Co., 82 N. J. Eq. 518,* the trustee was exempted, under the circumstances, from such surcharge by reason of holding securities on a falling market.

Speaking generally, every case to which the rule in *Heisler* v. *Sharp* is applicable must be judged by its own circumstances; and those obtaining in this case will be now considered. It is intimated that the executor did not act in good faith, but that claim is unsubstantial, as will be seen later. The substantial claim is that it did not act "with ordinary discretion;" and in this, to wit, that holding as executor one thousand and nineteen out of one thousand and twenty-six issued shares of the stock of the Nice & Schreiber Company, a corporation, it joined in an application to the federal court for a voluntary receivership of that corporation to avert threatened proceedings in bankruptcy. It was on account of this action that the appellant was held responsible

by the orphans court and prerogative court for certain results that followed and which will be detailed as briefly as practicable.

Winfield S. Nice died on March 2d or 3d, 1926, a resident of Atlantic county. He was the principal—in effect the sole—owner of Nice & Schreiber Company, a butter and egg and poultry trading corporation located in Philadelphia; of the one thousand and twenty-six issued shares, as already stated, one thousand and nineteen stood in his name, and most, if not all, of the other seven shares were his property but in the names of others for qualifying purposes. This stock was the principal asset of his estate, and represented a going concern. The company itself was apparently solvent, as to creditors, though a hasty audit as of March 2d, 1926, indicated an impairment of capital to the extent of about $17,000. The death of Nice naturally removed one of the mainsprings of the business, but it was deemed at first important to keep the business running to support the value of the stock, that value being largely dependent on good will. But there were large debts outstanding and little or no cash to pay them; and collections were slow. The parties interested hoped to sell the corporation to two employes named Burton and Lippincott or one of them. Lippincott offered $52,500 for the stock, Burton $55,000; but before either offer was consummated, both were withdrawn. Burton then offered $45,000, and an agreement of sale was drawn, but Burton refused to sign it. The last substantial prospect of a sale having faded away, the directors resolved to liquidate the company, and that liquidation was proceeding when under date of April 19th, Burton wrote demanding $10,000 "on account of accumulated poultry profits." A week later, April 26th, Burton's attorney wrote to the Corn Exchange Bank claiming $17,000 on behalf of Burton and threatening receivership proceedings.

For over a month previous to this, the interests of the beneficiary respondent had been in the hands of John Weaver, a lawyer and formerly mayor of Philadelphia, they having given him a general power of attorney in that regard under

·date of March 22d. Weaver was in close touch with Mr. Freeman, the trust officer of the Corn Exchange Bank, and he participated in a conference with Freeman, for the bank ·executor, Weston, secretary and treasurer of the corporation, Davis, its attorney, and Thomas L. Gaskill of the New ·Jersey bar, counsel for the estate. At that conference it was resolved to ask for a receiver as of a solvent corporation, to conserve its assets: and this was done by application to the federal court, and forestalled possible if not probable proceedings in involuntary bankruptcy. Mr. Weaver was appointed one of the receivers; Sidney E. Smith was the ·other. They spent over a year in getting in the assets and liquidating. Of assets estimated at the time of making the ·application at $289,000, they collected about $160,000; of debts of $117,000 they paid ninety-seven per cent. The ·awards of the court to receivers and counsel, master in chancery, &c., totaled $40,953, of which the receivers later voluntarily returned $10,000 to the beneficiaries. The balance, $30,953, represents the surcharge for which the orphans ·court held the executor liable on account of "gross carelessness, negligence and indifference." The court also refused to allow any commissions or counsel fee beyond those previously awarded. This last, though included in the appeal to the prerogative court, does not seem to be embraced in the appeal to this court, and we have not considered it.

On this phase of the case the question does not seem to involve particularly the amount of the counsel and receivers' fees, which were outside the control of the executor and were in a sense assented to by the act of the beneficiaries in executing a general release to the receivers. ·The real question is whether the action of the executor in bringing on the receivership with the best intentions to conserve the property and liquidate without bankruptcy was such an act of gross error of judgment, amounting to negligence, as to make it liable to a surcharge, not of losses in collection arising out of the receivership—for there is no suggestion that anyone else could have obtained better results—but a surcharge of what the court ordered paid to the receivers and their coun-

sel and other court officers for the work done by them. In other words, all that it is claimed was lost by the receivership was the cost of it in administration expenses. The fundamental question is whether or not, with the situation confronting the executor as it appeared on April 27th, 1926, the day before the bill for receiver was filed, it was bad faith, gross negligence, or indifference on the part of the executor to take that action. When it is considered that every interest was represented, including the exceptants and that there was unanimity of opinion that the best interests of the corporation would be served by the action taken, it cannot be said that there was such neglect of duty on the part of the executor as to charge it with liability for what happened as a consequence of that action. The parties were faced with an emergency, and had to make a decision of some kind. A similar situation existed in *Heisler* v. *Sharp, supra.* The question before the executor in that case was whether to pay, or stand a suit. The vice-ordinary there remarked, "if they had * * * refused to pay, and put the estate to the expense of defending a suit, which it now appears would, on the facts before the court, in all probability have resulted in the recovery of a judgment against them, there would have been much more reason to complain of their conduct than now exists." So, in this case, if the executor, with insufficient funds in hand to pay claims, had let matters take their course and a hostile proceeding had been taken at the instance of Burton, with receivers who had no friendly interest in the estate appointed to settle the affairs of the corporation, and the same results had followed, viz., a shrinkage of the assets of the estate, there would, in the language of the *Heisler Case,* have been much more reason to complain of the conduct of the executor than now exists.

We have said that the charge of bad faith is unsubstantial. It rests mainly, if not wholly, on the fact that the statement of assets and liabilities annexed to the bill showed the situation as of March 2d, with a bank balance of only $350, whereas on April 28th, the bank books showed a cash balance of over $40,000. The bill expressly alleged that the

statement was of the conditions existing on March 2d, so that there was no misrepresentation in that regard. As to the alleged balance of over $40,000 at the time the Burton claim was pressed, checks outstanding at that time reduced it to between $5,000 and $6,000. There can be no doubt that the capital of the corporation was impaired to the extent of about $17,000, as already stated.

We have been unable to find in the case any indications of bad faith on the part of the executor, or any such negligence in the administration of its trust as would justify the surcharge which is the subject of this appeal. In respect of this surcharge, therefore, the decree of the prerogative court and that of the orphans court will be reversed, with directions to settle the final account free of any such surcharge.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Campbell, Lloyd, Case, Bodine, Daly, Donges, Van Buskirk, Kays, Hetfield, Dear, Wells, JJ. 14.