840 A.2d 874 (2004)
366 N.J. Super. 98
STATE of New Jersey, Plaintiff-Respondent,
v.
Pradeep MADAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 21, 2003.
Decided January 28, 2004.
*875 Yvonne Smith Segars, Public Defender, attorney for appellant (Timothy P. Reilly, Designated Counsel, of counsel and on the brief).
Edward J. De Fazio, Hudson County Prosecutor, attorney for respondent (Damian P. Conforti, Assistant Prosecutor, on the brief).
Before Judges PRESSLER, CIANCIA and ALLEY.
The opinion of the court was delivered by
CIANCIA, J.A.D.
Defendant Pradeep Madan was indicted for the October 4, 1996 stabbing murder of Frederick Smith. The indictment in one count charged a knowing or purposeful murder, including murder by infliction of serious bodily injury. N.J.S.A. 2C:11-3a(1),(2). The indictment in other counts charged fourth-degree unlawful possession of a weapon, third-degree possession of a weapon for an unlawful purpose, and third-degree escape.
Defendant entered a guilty plea to aggravated manslaughter and escape. The State's sentencing recommendation was twenty years with a seven-year parole disqualification for manslaughter and a concurrent five-year sentence for escape. The State was free to argue that both sentences should run consecutively to a New York State sentence defendant was serving for attempted robbery.
On the day of sentencing, the trial court rejected defendant's plea agreement. A few days later, following another discussion about the propriety of defendant's plea, the court issued a one-page "memorandum" to counsel setting forth its reasons for rejecting the plea agreement.
The following month, defendant was tried before a jury and found guilty of all charges in the indictment except thirddegree possession of a weapon for an unlawful purpose. He was sentenced to life imprisonment with thirty years parole disqualification for murder, and a consecutive five-year term for escape was also imposed. The conviction for unlawfully possessing a weapon was merged into the murder conviction. On direct appeal we affirmed defendant's judgment of conviction. State v. Madan, No. A-7069-98T4 (App.Div. November 17, 2000). Significantly, no issue was raised as to the trial court's rejection of the plea agreement. The Supreme Court denied defendant's petition for certification, State v. Madan, 167 N.J. 632, 772 A.2d 934 (2001).
Defendant filed a petition for post-conviction relief which was denied following *876 oral argument. No evidentiary hearing was provided.
Defendant appeals the denial of postconviction relief and raises the following issues:
POINT I
THE ORDER DENYING POST-CONVICTION RELIEF SHOULD BE REVERSED AND REMANDED SINCE THE TRIAL COURT FAILED TO CONDUCT A FULL EVIDENTIARY HEARING ON THE ISSUE OF INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIM.
(A) TRIAL COUNSEL'S FAILURE TO ADEQUATELY PREPARE FOR TRIAL AND TO CONSULT HIS CLIENT WITH RESPECT TO HIS CONSTITUTIONAL RIGHT TO TESTIFY REGARDING THE DEFENSE OF SELF-DEFENSE, RESULTED IN TRIAL COUNSEL MAKING A CATASTROPHICALLY UNFULFILLED PROMISE TO THE JURY IN HIS OPENING STATEMENT THAT DEFENDANT WOULD TESTIFY DURING TRIAL, AND RESULTED IN THE JURY NOT HEARING EVIDENCE NECESSARY TO THE DEFENSE OF SELF-DEFENSE.
(B) TRIAL COUNSEL FAILED TO ADEQUATELY PREPARE FOR TRIAL AND TO CONSULT HIS CLIENT REGARDING DECISIONS WHICH WERE MADE WITH RESPECT TO CONCEDING GUILT TO LESSOR INCLUDED CHARGES, THEREBY ADMITTING GUILT TO MANSLAUGHTER WITHOUT THE CLIENT'S APPROVAL AND HAVING ADVISED THE CLIENT THAT HE WOULD BE "ACQUITTED" OF THE CHARGES WITHOUT TESTIFYING.
POINT II
TRIAL COUNSEL'S FAILURE TO CONDUCT AN INVESTIGATION OR PRESENT EVIDENCE CONSISTENT WITH DEFENDANT'S DEFENSE WAS NOT UNASSAILABLE AS A STRATEGY DECISION.
POINT III
DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BY COUNSEL'S FAILURE TO RAISE THE ISSUE OF THE IMPROPER REJECTION OF HIS NEGOTIATED PLEA BY THE TRIAL COURT ON DIRECT APPEAL.
(A) THE POST-CONVICTION COURT ERRED IN REJECTING PETITIONER'S CLAIM THAT APPELLATE COUNSEL FAILED TO PURSUE A VALID APPELLATE ISSUE, SPECIFICALLY, THAT THE TRIAL COURT ABUSED ITS DISCRETION BY REJECTING DEFENDANT'S PLEA TO AGGRAVATED MANSLAUGHTER AND THAT DEFENDANT SHOULD BE ENTITLED TO THE BENEFIT OF THE PLEA BARGAIN.
(B) IF THE APPELLATE COURT FINDS THAT THIS MATTER MUST FIRST BE DECIDED BY THE LAW DIVISION, THE MATTER MUST BE REMANDED TO ANOTHER LAW DIVISION JUDGE, SINCE THE TRIAL/POST-CONVICTION COURT ERRED IN REFUSING TO RECUSE HERSELF FROM DECIDING THE ISSUE OF APPELLANT COUNSEL'S INEFFECTIVENESS, HAVING PREVIOUSLY EXPRESSED CONCLUSIONS REGARDING THE SUBSTANTIVE MERITS ON THE ISSUE OF WHETHER THE REJECTION OF *877 DEFENDANT'S PLEA WAS APPROPRIATE.
POINT IV
THE ORDER DENYING POST-CONVICTION RELIEF SHOULD BE REVERSED SINCE THE COURT ERRED IN FINDING THAT DEFENDANT WAS PROCEDURALLY BARRED FROM RAISING THE INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIM.
We find merit in defendant's contention that appellate counsel's failure to raise the trial court's rejection of defendant's plea agreement as an issue on direct appeal constituted ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). We are further persuaded that rejection of the plea agreement constituted an abuse of judicial discretion. State v. Daniels, 276 N.J.Super. 483, 487, 648 A.2d 266 (App.Div.1994), certif. denied, 139 N.J. 443, 655 A.2d 446 (1995). The consequence of our holding is the reinstatement of defendant's plea bargain. Accordingly, we do not address other issues which, if successful, would result in an evidentiary hearing on defendant's petition for postconviction relief.
We begin with the facts as available to the trial court at the time the plea was rejected. We note that the facts developed at trial were not significantly different. Defendant never denied stabbing the victim. Only some of the surrounding circumstances were ever in serious dispute. When defendant gave the factual basis for his plea to first-degree aggravated manslaughter, he admitted stabbing the victim, Frederick Smith. Defendant answered affirmatively when asked if the stabbing occurred "after Mr. Smith had engaged in a fight with you, physical fight?"
The presentence report prepared on October 13, 1998, provides the following description of events:
Mr. Pradeep Prakasa Madan is a 23 year old male, who pled guilty to the aggravated manslaughter of Mr. Frederick Smith. On October 4th, 1996 Mr. Madan was crossing the street at the intersection of Newark and Summit Avenues in Jersey City, N.J. when Mr. Smith stopped just short of hitting the defendant and two other juveniles with his car about 11:50 p.m. Angered, the trio started an argument with Mr. Smith and a female passenger. Words were exchanged and the victim, Mr. Smith got out of his car. These words escalated into a physical confrontation. The trio beat up on Mr. Smith then Mr. Madan stabbed Mr. Smith with a knife in the heart, delivering a fatal blow. Once arrested Mr. Madan managed to escape from the Hudson County prosecutors investigators. He remained at large until his arrest in New York City, New York on armed robbery charges.
The "defendant's version" is set out also:
As I was crossing the street at 5 corners, it was a red light, the victim took his foot off the brakes, eased up his car and hit me. I then turned and pointed to the light and I asked him if he didn't see the light. The victim came out of his car and punched me in my face. After he punched me in my face, we got into a physical confrontation. After that I thought he was reaching into his pocket. I pulled out a knife and stabbed him. The victim was drunk.
Defendant's criminal history as set out in the presentence report showed a 1995 Superior Court conviction for "POSS CDS (1000)," for which defendant received five years probation and 364 days in county jail. There were also two municipal court convictions, one for possession of marijuana *878 in 1994 and one for shoplifting in 1995. A 1994 assault charge had been dismissed in municipal court. A bench warrant was issued in August 1996 on charges for assault of a police officer, trespass, and resisting arrest. We have no indication of the disposition of those charges. Finally, there was a New York conviction for attempted robbery which was committed while defendant was an escapee from the present charges. We also note, as did the trial court, that defendant was on probation when the present offense was committed.
The author of the presentence report assessed the factors contributing to the present offense as follows:
It appears to this officer that the primary factor contributing to the present offense is that this defendant and the victim had a verbal exchange of words which escalated into a physical confrontation, resulting in the death of the victim.
The recommendation in the presentence report was that the plea agreement be honored.
The facts as revealed at trial were little more incriminating to defendant than those set forth in the presentence report. The victim was belligerent and aggressive toward defendant and invited defendant to strike him. Defendant may have refused the initial invitation, but a second demand from the victim resulted in a fight. The victim was stabbed three times, twice in the heart. None of the eyewitnesses saw the actual stabbing. The victim was suspected of having a gun because he wore one glove but, in fact, he did not have a weapon. Two of the three other persons accompanying the defendant threw objects at the victim, specifically a radio and a bicycle. Smith died shortly after midnight while in the hospital.
We are provided with a "transcript of rejected plea" dated November 4, 1998, a Wednesday. It consists primarily of a colloquy between the victim's father and the judge. The victim's family opposed defendant's guilty plea and sought a trial. There was a discussion as to whether the victim was inebriated and whether he was, as the State allowed, the aggressor. The judge and the victim's father went over the facts as each understood them. They agreed the victim's blood alcohol level was.046, although moments earlier the court read from a toxicology report "blood, ethanol, 0.64%, in the blood." The judge went on to note that there were "conflicting reports" on the facts, but "[n]one of the reports do indicate at all any position with respect to the self-defense defense." Other alleged facts preceding the stabbing were mentioned by the court. The victim's father at one point was willing to concede his son had been the aggressor in order to emphasize that even so, in his view, defendant's conduct was unjustified and a trial was necessary. At the end of the colloquy with the victim's father, the judge said:
Nevertheless, after I have reviewed all of this and considered what the reports say and the particulars concerning it and considered what the potential sentence speaks to, and I do give all the considerations to the charges and the location of the individuals and the entire scenario that is before me, I would consider that the plea agreement that has been struck here is not appropriate and the Court will reject it.
When defense counsel asked for the judge's reasons, other than that the family disagreed with the plea, the court responded that it would give reasons "on Friday in writing."
On Friday, November 6, 1998, another exchange took place on the record, this one *879 between the assistant prosecutor, defense counsel, and the court. Defense counsel urged the court to accept the plea or to sentence defendant to something greater than the plea provided but still as part of a plea agreement. The assistant prosecutor also urged the court to sentence defendant for aggravated manslaughter. During the course of the colloquy, the judge said:
I am specifically rejecting the agreement as I regard the nature of the crime, the strength and weaknesses of the State's case, and the defendant's prior record. I would say, furthermore, that the offense, as we know, was committed while the defendant was on probation. We also know he is currently serving a sentence in New York. And I also further considered the particular factors around, as I define it, the depraved manner in which the defendant behaved in this particular instance, the manner in which the ultimate harm was done to the victim and also the position of the victim's family.
Of special consideration to me in accepting or in rejecting or in not accepting this plea agreement was the fact that this defendant was originally charged with murder in the indictment which we know if he was convicted of that particular offense it would carry a sentence of between 30 years to life with 30 years of parole ineligibility.
Aggravated manslaughter, which is the crime to which the defendant entered a guilty plea in the plea agreement, is a crime of the first degree, but it carries a sentence of between 10 and 30 years.
The plea agreement calls for a 7-year stip on a 20-year sentence. The stipulated time here is outside the range of the sentence for aggravated manslaughter.
Clearly, the interests of justice would not be served by the Court accepting such an agreement which is outside of the limit.
Manslaughter is a crime of the second degree. I look at the plea papers.
I see counsel are conferring.
But I looked at the plea papers. The plea was to aggravated manslaughter. Manslaughter is a crime of the second degree. We know the range is between 5 and 10 years. This case, as I view it, clearly was not a manslaughter and the only reason I mention it is because of the 7 year stip which I don't know where that came from. But the plea was to aggravated manslaughter on a sentence that would go from 10 to 30 years.
Clearly, as I say, this is not a manslaughter, but an aggravated manslaughter case, in any event, and I say, therefore, the sentencethe anticipated sentence does not serve the interests of justice and I reject it.

[Emphasis added.]
The judge later added:
I am talking about the charges and I'm talking about even alternative charges. But I would say that in the consideration from the broad perspective of the charges and so forth, and recognizing that the plea is to an aggravated manslaughter, the range is not within the proper range; that 7-year stip is outside of the range of a sentence calling for an aggravated manslaughter.

[Emphasis added.]
Defense counsel then explained that the recommended sentence of twenty years with seven years parole disqualification was squarely within the range of firstdegree aggravated manslaughter. The judge said the proposed sentence was "on the lower end." The assistant prosecutor said:

*880 I just want to say that we've, myself personally as well as Mr. De Fazio and Mr. Theemling, senior staff members in the office, and, of course Mr. Theemling being the prosecutor himself and members of the homicide office, Judge, and they bring a wealth of experience to evaluating these cases and I have had the benefit of discussing it with them and with the family, it hasn't been clearly enough stated, and I am sure the Court is aware of this, and I know this is something that you have alluded to in terms of reaching a decision; but I wanted to personally say that myself personally and the office stand by the plea probably for a slightly different perspective than the Court in terms of considering perhaps the broader community.
The different perspective referred to was the possibility of an unfavorable jury verdict. The court responded that the decision was based on the facts as it understood them. The judge added:
And I could say from a consensus of that, I know that the State's position to a certain extent was that the victim was the aggressor. I have reports indicating the victim got out of the car and started an argument. If you want to call that aggression. I suppose some would. And then I have the statements from practically everybody that it was after the argument ensued it was the defendant who punched the victim here and that then the others threw objects at the victim: The bicycle, the radio. It was four on one. And another object. And then the defendant stabbed the victim three times in the area of the heart, after he was attacked by the other three juveniles.
Defense counsel, in turn, noted a version of the facts indicating the victim "smacked" his girlfriend who was in the car with him, not once but twice, when she tried to prevent him from getting out of the car. The judge conceded "[t]here are varying stories," but believed the victim did no more than get out of the car and argue with the defendant.
After urging from defense counsel to sentence defendant somewhere in the range for aggravated manslaughter, and the concurrence of the assistant prosecutor, the trial judge thought there was a great possibility that if the case went to trial there would be a jury finding of aggravated manslaughter. The court then "sentenced" defendant to twenty-five years imprisonment with twelve and one-half years of parole disqualification for firstdegree aggravated manslaughter and a consecutive five-year term for escape. Further exchange occurred between the court and the victim's family. Finally, defense counsel reported that defendant was unwilling to accept the sentence suggested by the court. The matter was set down for trial.
The same day as that hearing, November 6, 1998, the judge sent a written onepage "memorandum" to the assistant prosecutor and defense counsel setting forth her reasons for rejecting the plea agreement.
The trial court's memorandum starts by correctly noting the broad discretion afforded a judge in deciding to accept or reject a plea agreement. Daniels, supra, 276 N.J.Super. at 487, 648 A.2d 266; R. 3:9-2; R. 3:9-3(e). The memorandum then sets out the court's reasoning:
I specifically find that the interest of justice would not be served by my accepting the agreement as I regard the nature of the crime, the strength and weaknesses of the state's case and the defendant's prior record. Furthermore, this offense was committed while the defendant was on probation, and he is *881 currently serving a sentence in New York. I also considered the particular factors regarding the depraved manner in which the defendant behaved in this instance, and the manner in which the ultimate harm done to the victim, and also the position of the victim's family.

Of special consideration to me in not accepting this plea agreement was the fact that the defendant was originally charged with murder in the indictment: which if convicted would carry a sentence of between 50 yrs to life with 30 yrs of parole ineligibility. Even Aggravated Manslaughter, in which the defendant pled guilty, is a crime of the first [degree] but it carries a sentence of between 10 and 30 yrs. The plea agreement calls for a 7 yr. stip on a 20 yr. sentence. The stipulated time here is outside of the range of the sentence for aggravated manslaughter. Clearly the interest of justice would not be served with such a sentence. Manslaughter is a crime of the second degree which carries a sentence of 5 to 10 yrs. This is clearly not a manslaughter but an aggravated manslaughter case and the anticipated sentence does not serve the interest of justice.

[Emphasis added.]
While it is certainly true that a trial court has wide discretion in deciding whether to accept a plea, it must be a "sound discretion." State v. Brockington, 140 N.J.Super. 422, 427, 356 A.2d 430 (App.Div.), certif. denied, 71 N.J. 345, 364 A.2d 1077, cert. denied, 429 U.S. 940, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976). Judicial discretion is not unbounded and it is not the personal predilection of the particular judge.
Not long after adoption of the current state constitution, Judge Jayne, sitting with Judge McGeehan and then Judge William J. Brennan, Jr., had occasion to consider the nature of judicial discretion:
It has been said that judicial discretion is that discretion which is not and cannot be governed by any fixed principles and definite rules because the possible eventualities to be dealt with in the exercise of that power cannot be specifically catalogued. Such a definition obviously offends accuracy. Chief Justice Marshall in his decision rendered in Osborn v. [Bank of U.S.], 22 U.S. 738, 9 Wheat. 738, 866, 6 L.Ed. 204 (1824), stated: `Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect ... to the will of the law.'
Lord Mansfield had said in Rex v. Wilkes, 4 Burr. 2527, that judicial discretion `means sound discretion, guided by law. It must be governed by rule, not by humour. It must not be arbitrary, vague and fanciful, but legal and regular.'
Perhaps a more accurate composite definition is that `judicial discretion' is the option which a judge may exercise between the doing and the not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case. 23 Words & Phrases 278; Brandon v. Montclair, 124 N.J.L. 135, 11 A.2d 304 (Sup.Ct.1940), affirmed 125 N.J.L. 367, 15 A.2d 598 (E. & A.1940); Beronio v. Pension Comm'n of Hoboken, 130 N.J.L. 620, 33 A.2d 855 (E. & A.1943); Hoffman v. Maloratsky, 112 N.J. Eq. 333, 164 A. 260 (E. & A.1933).
And so it is universally recognized that the authority to exercise judicial discretion is not an arbitrary power of *882 the individual judge, to be exercised when, and as, his caprice, or passion, or partiality may dictate, or forsooth as his vindictiveness or his idiosyncrasies may inspire.
[Smith v. Smith, 17 N.J.Super. 128, 132, 85 A.2d 523 (App.Div.1951), certif. denied, 9 N.J. 178, 87 A.2d 387 (1952); accord Amo v. Genovese, 17 N.J.Super. 109, 111-112, 85 A.2d 529 (App. Div.1951), certif. denied, 9 N.J. 181, 87 A.2d 576 (1952).]
Similar thoughts have been expressed in other decisions. See, e.g., McFeely v. Bd. of Pension Comm'rs of City of Hoboken, 1 N.J. 212, 215, 62 A.2d 686 (1948) (stating that judicial discretion cannot be arbitrary or capricious); Annichiarico v. Mobilite, Inc., 19 N.J.Super. 492, 496-497, 89 A.2d 89 (App.Div.1952) (declaring that judicial discretion not properly exercised and which affects a party's substantial rights, may be reversed). In Wasserstein v. Swern & Co., 84 N.J.Super. 1, 6, 200 A.2d 783 (App.Div.), certif. denied, 43 N.J. 125, 202 A.2d 700 (1964), we said:
Preliminarily, it may be said that judicial discretion means legal discretion in the exercise of which the court must take account of the law applicable to the particular circumstances of the case and be governed accordingly. Implicit is conscientious judgment directed by law and reason and looking to a just result. Sokol v. Liebstein, 9 N.J. 93, 99, 87 A.2d 1 (1952); Kavanaugh v. Quigley, 63 N.J.Super. 153, 158, 164 A.2d 179 (App. Div.1960). Consequently, if the trial judge misconceives the applicable law or misapplies it to the factual complex, in total effect the exercise of legal discretion lacks a foundation and becomes an arbitrary act. When this occurs it is the duty of the reviewing court to adjudicate the controversy in the light of the applicable law in order that a manifest denial of justice be avoided. Kavanaugh v. Quigley, supra.
Our concern in the present case arises from the insufficient factual underpinning for the trial court's decision and the legal mistakes in the court's rationale. In our view, the facts presented a classic case for an aggravated manslaughter plea, although a jury could also find defendant guilty of murder as a result of the knowing infliction of serious bodily injury. Indeed, the court was willing to sentence defendant for first-degree aggravated manslaughter, but only if the terms of imprisonment and parole ineligibility were increased. The possibility of a defendant being found guilty of a greater offense, however, does not, in and of itself, provide a basis for rejecting a plea. There was no prior history here between defendant and the victim and, with the possible exception of what can be inferred from three stab wounds, no showing of premeditation or intent to kill. Indeed, the jury was charged not just on murder but on aggravated manslaughter, passion/provocation manslaughter, reckless manslaughter and self-defense, all as warranted by the evidence.
Defendant pled guilty to first-degree aggravated manslaughter which, by definition, requires reckless conduct by the actor causing death under circumstances manifesting extreme indifference to human life. N.J.S.A. 2C:11-4a(1). Those circumstances must demonstrate a high probability as opposed to a possibility of death. State v. Breakiron, 108 N.J. 591, 605, 532 A.2d 199 (1987); State v. Jenkins, 356 N.J.Super. 413, 425, 812 A.2d 1143 (App. Div.), certif. granted, 176 N.J. 279, 822 A.2d 609 (2003);[1]State v. Curtis, 195 *883 N.J.Super. 354, 366-367, 479 A.2d 425 (App.Div.), certif. denied, 99 N.J. 212, 491 A.2d 708 (1984). In State v. Reed, 211 N.J.Super. 177, 183-184, 511 A.2d 680 (App.Div.1986), certif. denied, 110 N.J. 508, 541 A.2d 1368 (1988), we upheld the appropriateness of an aggravated manslaughter charge where defendant, who was familiar with firearms, picked up a shotgun and fired at the victim, killing her. Defendant had not checked to see if the gun was loaded.
Here, the trial court said it considered defendant's prior record. That record, though not insubstantial, was insufficient to serve as a rational underpinning to reject an otherwise reasonable plea.
The trial court referenced the "depraved manner" in which defendant behaved. We find no such depravity over and above that which is inherent in the crime of first-degree aggravated manslaughter that would justify taking defendant's conduct out of the crime of aggravated manslaughter. Defendant cannot be said to have acted out of "whim or pleasure," or that he intended to cause "pain and suffering" as those terms have been used to test whether a murder is outrageously vile. State v. Ramseur, 106 N.J. 123, 207-211, 524 A.2d 188 (1987), cert. denied, 508 U.S. 947, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993); accord State v. Hunt, 115 N.J. 330, 388-389, 558 A.2d 1259 (1989) (concluding that twenty-four stab wounds inflicted on murder victim were insufficient to establish an aggravating factor in capital murder case because defendant was motivated by revenge). Defendant's act was apparently a moment of rage or perhaps even a misguided effort at self-defense. State v. Moore, 122 N.J. 420, 478, 585 A.2d 864 (1991). The victim was described at trial as small of stature, but defendant, according to the presentence report, is only five-feet seven, 140 pounds. This was not a big man overwhelming a small man.
We do not intend to minimize the gravity of defendant's conduct. A life was taken. Our criminal statutes, however, define criminal homicide in different gradations. See N.J.S.A. 2C:11-2b; accord State v. Grunow, 102 N.J. 133, 136-137, 506 A.2d 708 (1986). Our imperfect analogy to death penalty cases is only to demonstrate the absence of conduct that permits a finding of depravity beyond that which is inherent in the crime of aggravated manslaughter.
The trial court also mentioned the ultimate harm done to the victim. The death of the victim, however, does not convert manslaughter into murder. State v. Abrams, 256 N.J.Super. 390, 403-404, 607 A.2d 179 (App.Div.), certif. denied, 130 N.J. 395, 614 A.2d 617 (1992) (concluding that death of victim could not be used as aggravating factor in sentencing defendant for aggravated manslaughter); State v. Towey, 114 N.J. 69, 552 A.2d 994 (1989), appeal after remand, 244 N.J.Super. 582, 593, 583 A.2d 352 (App.Div.), certif. denied, 122 N.J. 159, 584 A.2d 226 (1990) (indicating that death of victim and recklessness of defendant's conduct are elements of reckless manslaughter and should not have been considered as aggravating factors); State v. Pineda, 227 N.J.Super. 245, 247-248, 546 A.2d 578 (App.Div.1988), aff'd on this issue, 119 N.J. 621, 575 A.2d 855 (1990) (holding that death of victim may not be used as aggravating factor in death by auto case). Nor does the "manner" of inflicting death in this case constitute a circumstance that somehow required defendant to stand trial for murder rather than plead guilty to aggravated manslaughter. See, e.g., State v. O'Donnell, *884 117 N.J. 210, 217, 564 A.2d 1202 (1989) (construing "cruelty" as an aggravating factor only where defendant's intent was to inflict pain or suffering on the victim); State v. Bowens, 108 N.J. 622, 639-640, 532 A.2d 215 (1987) (upholding five-year parole disqualification placed upon a fifteen-year sentence for aggravated manslaughter when aggravating factors included the brutal, senseless stabbing of defendant's homosexual lover, along with defendant's prior record and the need to deter others).
The trial court's statement that a murder conviction "would carry a sentence of between 50 yrs to life with 30 yrs of parole ineligibility" is, of course, incorrect. At all relevant times the sentence for non-capital murder under circumstances such as those in the present case has been thirty years to life with thirty years parole disqualification. N.J.S.A. 2C:11-3b(1); see, e.g., L.1985, c. 178 § 2 (changing "may be sentenced" to "shall be sentenced").
The trial court's statement that the "stipulated time here is outside of the range of the sentence for aggravated manslaughter" is also incorrect. The plea agreement called for a presumptive term of twenty years, N.J.S.A. 2C:44-1f(1)(a), with seven years parole ineligibility. The No Early Release Act, N.J.S.A. 2C:43-7.2, had not been enacted when this crime was committed. If defendant had used or possessed a firearm, a period of parole ineligibility would have been mandated, N.J.S.A. 2C:43-6c, but he did not have a firearm. In any event, a seven-year period of parole ineligibility is more than one-third of the twenty-year sentence and thus would have complied with any statute requiring imposition of at least one-third the sentence as a period of parole ineligibility.
If the trial court was commenting on a perceived anomaly of a presumptive term co-joined with a period of parole ineligibility, that is hardly a sufficient basis to reject a plea. Bowens, supra, 108 N.J. at 639, 532 A.2d 215; State v. Kruse, 105 N.J. 354, 361-362, 521 A.2d 836 (1987).
The court's concluding reference to manslaughter being a crime of the seconddegree is a non sequitur in the present context of a plea to first-degree aggravated manslaughter. The final sentence, "[t]his is clearly not a manslaughter but an aggravated manslaughter case and the anticipated sentence does not serve the interest of justice," is equally enigmatic. Defendant was pleading to aggravated manslaughter and the sentence was squarely within the range for that firstdegree offense.
Essentially, the trial court believed the recommended sentence was too lenient for the crime committed. While a court is certainly at liberty to reject a sentence it considers inappropriate, if that decision is based on one version of the facts when several versions are likely to be presented to the jury, and if that decision is influenced by confusion over the applicable law, then the exercise of discretion is erroneous. Here, as the trial eventually demonstrated, and as the presentence report presaged, the facts supported jury instructions for murder, aggravated manslaughter, passion/provocation manslaughter, reckless manslaughter, and self-defense.
We note the trial court's initial decision to reject the plea was expressed after a lengthy exchange between the court and the victim's father. Naturally, a parent wants the most severe sanction for the person who killed his son. The views of the victim's family may be taken into consideration when considering a plea agreement, but the family's level of grief or degree of dissatisfaction with the plea cannot be controlling. The court must evaluate the facts, both admitted and debated, apply those facts that can be established *885 to the law, and then test the plea agreement against the facts, the law, and the range of permissible sentences under the Code. The court's experience with similar or analogous plea agreements should also be brought to bear in an effort to minimize sentencing disparity. In this instance we believe the proper analysis was not conducted.
The trial court's discretion to reject a plea, R. 3:9-2; R. 3:9-3(e), is indeed wide, but it cannot be unstructured and it is not limitless. Simply concluding that the interests of justice would not be served is insufficient if reasons are not provided that support such a conclusion or if the rationale is based on an incorrect legal analysis. We find the exercise of judicial discretion in this case plainly erroneous and manifestly a misuse of that discretion. The consequences to defendant are apparent.
A defendant may not be entitled to an offer of a plea bargain from the prosecutor, but when such an offer is made, accepted, and entered on the record, a defendant is entitled to a judicial assessment of that agreement grounded in a correct understanding of the law and the proper exercise of discretion. An errorfree trial following the erroneous rejection of a plea agreement does not cure the pretrial error. Plaintiff's exposure to conviction and sentence for a greater offense than that which was bargained for then becomes a consequence of judicial error, not due process. Nor does the erroneous rejection of a plea agreement serve the legitimate "mutuality of advantage" a plea affords to both the defendant and the State. See State v. Taylor, 80 N.J. 353, 361, 403 A.2d 889 (1979). Proper functioning of "[t]he system enables a defendant to reduce his penal exposure and avoid the stress of trial while assuring the State that the wrongdoer will be punished and that scarce and vital judicial and prosecutorial resources will be conserved through a speedy resolution of the controversy." Ibid. (citations omitted).
Accordingly, defendant's judgment of conviction is vacated and his plea agreement is reinstated. Defendant shall be resentenced in accordance with the terms of the plea agreement.
Reversed and remanded.
NOTES
[1] Jenkins was affirmed by the New Jersey Supreme Court shortly after this opinion was decided. State v. Jenkins, 178 N.J. 347, 840 A.2d 242 (2004).