916 A.2d 469

IN THE MATTER OF THE ESTATE OF HOWARD C. HOPE, SR., DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted January 24, 2007—Decided February 22, 2007.

534

Before Judges CUFF, WINKELSTEIN and BAXTER.

*Beran & Beran,* attorneys for appellants, *Dorothy Delayo* and *James Hope (Barry J. Beran,* on the brief).

*Ballard Spahr Andrews & Ingersoll,* attorneys for respondent, *S. David Brandt,* Esquire, Administrator C.T.A. *(John B. Kearney* and *Joseph T. Ciampoli,* on the brief).

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

Howard Hope died testate, leaving his residuary estate to his four children. The primary asset of the residuary estate is a parcel of real estate located in Gloucester Township, Camden County. Two of the children, appellants James Hope and Dorothy Delayo, challenged the administrator's decision to sell the property and distribute the proceeds among the four heirs equally; they requested that the administrator distribute one-half of the property to them in kind. The Chancery Division judge agreed with the administrator, and ordered the property sold and the proceeds distributed to the beneficiaries in cash.

Appellants assert that the court's order is contrary to the language and intent of *N.J.S.A.* 3B:23–1 and –3, which address distribution of estate assets in kind. We conclude that under the circumstances, despite the preference for in-kind distribution expressed in the statutes, the trial judge's order that the property be sold and the proceeds be distributed in cash was not an abuse of discretion. Consequently, we affirm.

In Hope's will, which was admitted to probate, he devised his personal property to his son, James Hope, whom he also named as

executor. Hope bequeathed the remainder of his estate to his four children, "share and share alike." The court subsequently appointed S. David Brandt as Administrator C.T.A., to replace James Hope as executor.

The primary asset in the residuary estate is a sixteen-acre parcel of land, zoned R–1 Residential for single-family dwellings. To assess the property's value, Brandt retained the Ragan Design Group. According to Ragan's report, "[t]he site is largely wooded with a small wood frame house located [on] the site.... The house is dilapidated and is in desperate need of repair." The report questioned "whether the home is habitable" or "meets current code standards for occupancy."

While the report indicates that the property "could conceivably be evenly divided without substantial detriment or significant loss of value to the estate," it concluded, and appellants do not dispute, that developing half of the property, as opposed to developing the entire property, diminishes the total development potential and the concomitant revenue that could be generated from the property. Developing the entire parcel consistent with the R–1 standards would yield eleven lots, while developing half of the parcel would yield five lots. Developing only one-half of the property, as suggested by appellants, would increase the cost per buildable lot.

James Hope has lived in the home on the property for the past fifty years. Neither he nor Delayo presented the trial court with a proposal as to how the property should be subdivided.

■ Appellants claim that in-kind distribution is required by two provisions of Title 3B of the New Jersey Statutes Annotated, which govern the administration of estates. *See N.J.S.A.* 3B:1–1 to 29–1. They argue that *N.J.S.A.* 3B:23–1 and –3, found in chapter 23, Article 1, titled "DISTRIBUTION IN KIND," call for an in-kind distribution of their shares of the residuary estate. First, they claim that the language of *N.J.S.A.* 3B:23–1 supports their argument that it is "reasonably possible" to distribute the shares of their father's residuary estate in kind. While it may be

"reasonably possible" to do as appellants suggest, we conclude that *N.J.S.A.* 3B:23–1 does not apply in the given circumstances. The statute reads, in pertinent part:

> Except where a will authorizes distribution to be made in cash or in kind, the distributable assets of ... *[a] testator's estate shall be distributed in kind to the extent reasonably possible through application of the following provisions:*
>
> a.   A specific devisee is entitled to distribution of the thing devised to him;
>
> b.   Any devise payable in money or an intestate share may be satisfied by value in kind provided;
>
> (1) The person entitled to the payment has not demanded payment in cash;
>
> (2) The property distributed in kind is valued at fair market value as of the date of its distribution;  and
>
> (3) No residuary devisee has requested that the asset in question remain a part of the residue of the estate.
>
> [*N.J.S.A.* 3B:23–1 (emphasis added).]

The introductory language of the statute provides that distribution in kind is required "through application" of the provisions of subsections a. and b. Neither subsection is applicable here. Subsection a. is not applicable, as it only applies to specific devisees; the subject property was devised as part of the residuary estate. For subsection b. to be applicable, the devise must either be a "devise payable in money" or an "intestate share." The residuary estate here is neither—it is a devise, by will, of real property, not of a stated sum of money.

■   That takes us to appellants' next argument, that *N.J.S.A.* 3B:23–3, entitled "Method of distribution," requires in-kind distribution of the residuary estate.   That statute says:

> If the personal representative of either a testate or an intestate estate has, in the exercise of good faith and reasonable discretion, continued to hold in kind the distributable assets of an intestate estate or of the residue of a testate estate, the assets shall be distributed in kind if there is no objection to the proposed distribution and it is practicable to distribute undivided interests, otherwise those assets shall be converted into cash for distribution.
>
> [*N.J.S.A.* 3B:23–3.]

While we agree with appellants that this statute is applicable to the distribution of the decedent's residuary estate, we disagree that it requires distribution in kind under the facts present here.

We first look to the language of the will to determine if the testator expressed an intent as to how the property should be distributed. *See Wilson v. Flowers,* 58 *N.J.* 250, 260, 277 *A.*2d 199 (1971) (court's function in construing will is to determine probable intention of testator). Here, the language of the will created a tenancy in common by use of the term "share and share alike," granting each beneficiary an undivided interest in the property. *See Cody v. Fitzgerald,* 2 *N.J.* 93, 98–99, 65 *A.*2d 750 (1949) (finding that where a testator devised property "share and share alike," the "devise ... was [to the heirs] as tenants in common"); *see also Newman v. Chase,* 70 *N.J.* 254, 267, 359 *A.*2d 474 (1976) (tenancy in common gives each cotenant an undivided interest in whole estate). The will did not, however, direct how the property should be distributed; it is silent as to whether distribution shall be in kind or whether the property should be sold and the proceeds distributed in cash.

The will does, however, provide the personal representative with the power to undertake either method of distribution. It permits the personal representative to sell "any and all" of the decedent's property, but does not require him to do so. A fair construction of the will leads to a conclusion that the decedent had no preference for distribution in kind or distribution in cash.

Given that the will does not direct the method of distribution, we next examine whether *N.J.S.A.* 3B:23–3 requires distribution in kind under the facts presented. That statute provides that distribution in kind is warranted "if there is no objection to the proposed distribution and it is practicable to distribute undivided interests[;] otherwise[,] those assets shall be converted into cash for distribution." *N.J.S.A.* 3B:23–3. How this statute is applied in any given factual setting has not previously been addressed by our courts, and it has no pertinent legislative history. The statutory language is, however, substantially similar to § 3–906 of the Uniform Probate Code (UPC), which was in effect when Title 3B was enacted in 1982. The UPC stated that "[t]he residuary estate shall be distributed in kind if there is no objection to the proposed

distribution and it is practicable to distribute undivided interests. In other cases, residuary property may be converted into cash for distribution." *Unif. Probate Code* § 3–906, 8 *U.L.A.* 273 (1998) (explanatory note on amendments).

Because this language is almost identical to the language of *N.J.S.A.* 3B:23–3, the Comment to the UPC is instructive as to the intent of *N.J.S.A.* 3B:23–3. The Comment indicates that "a personal representative [should] make distribution in kind whenever feasible and . . . convert assets to cash only where there is a special reason for doing so." Comment to *Unif. Probate Code* § 3–906, 8 *U.L.A.* 273 (1998). Thus, given the similarity of language between the UPC and *N.J.S.A.* 3B:23–3, we conclude that the New Jersey statute also expresses a preference for in-kind distributions. A leading New Jersey treatise has come to the same conclusion. *See* 7A *New Jersey Practice, Wills and Administration* § 1712, at 322 (Alfred C. Clapp & Dorothy G. Black) (rev.3d ed.1984) (the New Jersey laws governing administration of estates express "a preference for distribution in kind" (quoting Official Comment to *Unif. Probate Code* § 3–906)).

That New Jersey has a preference for in-kind distribution does not mean, however, that in-kind distribution is warranted under all circumstances. In-kind distribution may not be appropriate where a beneficiary with an interest in the asset being distributed objects. *See N.J.S.A.* 3B:23–3 ("assets shall be distributed in kind if there is no objection to the proposed distribution"). That is the situation here, where appellants' siblings objected to distribution in kind. Though appellants argue that the statutory language should be construed to mean that those beneficiaries who do not object to in-kind distribution must receive in-kind distribution, we disagree. We read the statute to mean that if any devisee of a particular asset objects to the in-kind distribution of that asset, distribution in kind of that asset is not required; instead, the mode of distribution is subject to the equitable discretion of the personal representative of the estate, and ultimately, of the court.

■ A personal representative may exercise "ordinary discretion within the scope of his powers" in administering an estate. *In re Corn Exch. Nat'l Bank & Trust Co.*, 109 *N.J. Eq.* 169, 170–71, 156 *A.* 455 (E. & A.1931). So too may the General Equity judge when called upon to determine the proper distribution of estate assets.

■ Remedies available to courts of equity "are broad and adaptable." *In re Mossavi*, 334 *N.J.Super.* 112, 121, 756 *A.*2d 1076 (Ch.Div.2000). While equitable discretion is not governed by fixed principles and definite rules, " '[i]mplicit [in the exercise of equitable discretion] is conscientious judgment directed by law and reason and looking to a just result.' " *State v. Madan*, 366 *N.J.Super.* 98, 109–10, 840 *A.*2d 874 (App.Div.2004) (quoting *Wasserstein v. Swern & Co.*, 84 *N.J.Super.* 1, 6, 200 *A.*2d 783 (App. Div.), *certif. denied*, 43 *N.J.* 125, 202 *A.*2d 700 (1964)). A trial court's rulings on discretionary decisions are entitled to deference and will not be reversed on appeal absent a showing of an abuse of discretion involving a clear error in judgment. *See State v. Marrero*, 148 *N.J.* 469, 484, 691 *A.*2d 293 (1997); *State v. Kelly*, 97 *N.J.* 178, 216, 478 *A.*2d 364 (1984); *Harris v. Peridot Chem. (N.J.), Inc.*, 313 *N.J.Super.* 257, 283, 712 *A.*2d 1181 (App.Div.1998).

Here, against this standard, we conclude that the administrator did not abuse his discretion in choosing to sell the property and distribute the proceeds in cash; nor did the trial judge abuse his discretion in ordering that the administrator's plan be carried out. Not only did two of the four beneficiaries object to in-kind distribution of the property, but distribution in kind was impracticable. *See N.J.S.A.* 3B:23–3 (property "shall be distributed in kind if there is no objection to the proposed distribution *and it is practicable* to distribute undivided interests" (emphasis added)).

In-kind distribution is impracticable here for three primary reasons. First, as we have explained, two of the four residuary estate beneficiaries have objected to distribution of the estate in kind. Second, appellants failed to submit a plan for subdividing the property. Finally, and significantly, while the Ragan report

indicates that the property "could conceivably be evenly divided without substantial detriment or significant loss of value to the estate," the report concludes that developing half of the property, as opposed to developing the entire property, would diminish the total development potential, increasing the cost per lot. Thus, distribution in kind would have lessened the value of the shares of the residuary estate. In the face of an objection, reducing the value of the beneficiaries' shares would be contrary to the personal representative's duty to settle and distribute the decedent's estate as "efficiently as is consistent with the best interests of the estate ... [and] the best interests of successors to the estate." *N.J.S.A.* 3B:10–23; *see also Estate of Fitzgerald v. Linnus,* 336 *N.J.Super.* 458, 468–69, 765 *A.*2d 251 (App.Div.2001) (quoting *N.J.S.A.* 3B:10–23 in reviewing executor's duties).

While no published decision in this State has addressed when in-kind distribution is warranted under *N.J.S.A.* 3B:23–3, both North Dakota and Maine have addressed the issue under similar statutes, also adopted from the UPC. They have arrived at a conclusion similar to the one we reach here—that is, distribution in kind, while preferable, is subject to the discretion of the court given the attendant circumstances. *See In re the Estate of Zimbleman,* 539 *N.W.*2d 67, 73 (N.D.1995) (because the UPC, as adopted in North Dakota, requires in-kind distribution "only 'to the extent possible,' " it was not a clear error of fact or law for trial court to order the personal representative to sell the property contrary to the wishes of a beneficiary); *Estate of Haynes,* 594 *A.*2d 1112, 1113 (Me.1991) (citing to section 3–906(a)(4) of the UPC as adopted in Maine, the state supreme court held that where a will left undivided property in the residuary estate to the heirs "in equal shares, share and share alike," the trial court's decision to distribute undivided shares in kind, rather than sell the assets and convert them to cash was not an abuse of discretion; a probate court's discretion in distributing estate assets is broad and may include physical partition, sale, distribution in kind, or some combination of these remedies).

Accordingly, under the circumstances, the administrator of the decedent's estate did not abuse his discretion in declining to distribute one-half of the property in kind. His decision to sell the property and distribute the proceeds of the sale in cash will maximize the value of the estate for all of the beneficiaries. The Chancery Division judge's order for the sale of the property in its entirety, essentially affirming the executor's decision, was not an abuse of discretion.

Affirmed.