**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5576-14T2

IN THE MATTER OF THE
ESTATE OF ANNA FABICS.

_____

Submitted May 10, 2017 — Decided  July 19, 2017

Before Judges Simonelli and Gooden Brown.

On appeal from the Superior Court of New
Jersey, Chancery Division, Middlesex County,
Docket No. 247609.

Ellen Heine, appellant pro se.

Shamy & Shamy, LLC, attorneys for respondent
Laszlo Fabics (Joseph J. Catanese, of counsel
and on the brief).

PER CURIAM

In this probate matter, Ellen Heine, as executrix of the
Estate of Joseph Fabics, appeals from several Chancery Division
orders and a final judgment involving the Estate of Anna Fabics
(the Estate).  For the following reasons, we affirm all orders and
the final judgment.

I.

The following facts are pertinent to our review.  Anna Fabics, the mother of Joseph[1] and Laszlo Fabics, died testate on January 7, 2015.  Anna's last will and testament devised her residuary estate in equal shares to her sons.  The will appointed Laszlo as executor and directed him

> to sell any property of which I die seized or possessed, or to which at the time of my death, I may be or thereafter become entitled, without prior approval of any person or court, at public or private sale, at such times, upon such terms, in such manner and for such prices as he deems to the best interest of my estate, or to dispose of whatever is not saleable, to execute and deliver deeds or other instruments for the transfer and conveyance thereof, and to transfer and pay over the proceeds in accordance with the instructions herein contained.

> [(Emphasis added.)]

It appears that Anna's home was the Estate's major asset, which Joseph wanted to purchase, but Joseph claimed there was jewelry and other valuable personal property in the home that Laszlo had stolen or improperly disposed.  In March 2015, Joseph filed a complaint and order to show cause in the Chancery Division, seeking an order enjoining Laszlo from removing, selling, or disposing of any Estate property; requiring Laszlo to return all

_____

[1]  We use first names to identify the family members for ease of reference.  We mean no disrespect in so doing.

items taken from the home and identify items of sentimental value; requiring Laszlo to provide an accounting; and removing Laszlo as executor and appointing Joseph as executor.

In an April 24, 2015 order, the court ordered Laszlo to cease removal, disposition and/or sale of all estate property until completion of a plenary hearing. Thereafter, on May 19, 2015, Joseph filed a second complaint and order to show cause in the Chancery Division to set aside probate of the will, alleging the will was a "stolen" will because the probated copy had the name "Joseph" written on it, and because the death certificate misidentified Anna as Anna R. Fabics. Joseph also sought Laszlo's removal as executor based on his "bad faith performance of the [w]ill."

In a May 29, 2015 order, Judge Douglas K. Wolfson scheduled a hearing for June 15, 2015, to determine whether to remove Laszlo as executor. The order also permitted Joseph to enter Anna's home to conduct an inventory of Anna's personal property.

Joseph conducted a two-day inventory. Laszlo gave Joseph an opportunity to purchase the personal property he wanted, the value of which would be deducted from Joseph's share of the Estate's proceeds. Laszlo told Joseph to make a valid offer and warned him that if he did not do so, the property would be sold, donated, or

disposed. Joseph listed the items he wanted, but never made a valid offer.

On the Friday before the start of trial, Joseph filed a motion on short notice to compel discovery. At the beginning of trial on Monday, June 15, 2015, Joseph advised Judge Wolfson that the discovery he needed was a list of all bills of the Estate that remained unpaid. Judge Wolfson denied the motion, finding it was untimely filed and the discovery sought was irrelevant to the issues to be tried.

After a two-day bench trial, on June 19, 2015, Judge Wolfson entered final judgment dismissing Joseph's two complaints with prejudice. The judge dismissed Joseph's request for an accounting without prejudice, as premature, finding Laszlo was not required to provide an accounting at that time. The judge also discharged a lis pendens Joseph had filed against Anna's home.

In a written opinion, the judge determined that Joseph failed to substantiate his allegations of Laszlo's waste of Estate assets, misconduct, or abuse of discretion. The judge was satisfied that Laszlo had carried out his duties as executor properly, in good faith, and within the bounds of his discretion. The judge noted that while Joseph claimed Laszlo wasted estate assets, Joseph did not identify specific assets or their purported economic value.

4

Judge Wolfson found that Joseph's primary motivation in this litigation was to purchase Anna's home, and Joseph consistently insisted that Laszlo's refusal to sell it to him violated his fiduciary duty as executor. The judge determined that Laszlo had offered to sell the home to Joseph, but Joseph's contingencies were unacceptable. Laszlo eventually accepted a third-party contract for a cash sale without contingencies. The judge found Laszlo had the authority to enter into the contract, his conduct was entirely consistent with his responsibilities as executor, and his decision to sell the home to a third-party and not Joseph was made in good faith.

Judge Wolfson determined there was no authority requiring Laszlo to update Joseph regarding the estate's assets and liabilities within any specific timeframe, and Joseph failed to demonstrate special causes to warrant an accounting prior to the one-year period set forth in N.J.S.A. 3B:17-2. The judge denied Joseph's request for an accounting without prejudice to his right to challenge the final accounting. The judge also found that Laszlo was not required to consult with Joseph and did not abuse his authority or violate his fiduciary duty to make unilateral decisions. Lastly, Judge Wolfson found Joseph presented no evidence that the probated will was a forgery, was stolen, or how the misspelling of Anna's name on the death certificate was

relevant to Laszlo's position as executor. Joseph filed a motion for reconsideration of the June 19, 2015 final judgment and for other relief.

In an attempt to circumvent the final judgment, on June 25, 2015, Joseph filed a petition for discovery in the Law Division requesting, in part, access to financial information regarding the Estate's assets and liabilities. The next day, he filed a second lis pendens against Anna's home. He also served a subpoena duces tecum on Laszlo.

In a July 24, 2015 order, Judge Wolfson denied Joseph's motion for reconsideration and barred him from filing any other actions in the Chancery Division without prior leave of court. In a separate July 24, 2015 order, the judge dismissed the petition for discovery with prejudice; discharged a second lis pendens; quashed a subpoena duces tecum; ordered Joseph to pay $3500 for Laszlo's counsel fees; and barred Joseph from filing any other action in the Law Division.

On August 10, 2015, Joseph filed a notice of appeal from the May 29, 2015 and July 24, 2015 orders and the June 19, 2015 final judgment. That same day, he filed a third lis pendens against Anna's home, which Laszlo moved to discharge. In a December 18, 2015 order, Judge Wolfson discharged the third lis pendens; enjoined Joseph from filing any additional lis pendens without

A-5576-14T2

leave of court; and ordered him to pay $1750 for Laszlo's counsel fees for the motion.

Joseph died on December 16, 2015, and Heine was appointed executrix of his estate. Heine moved to substitute Joseph's estate as the proper party in this matter, and amended the notice of appeal to include the December 18, 2015 order. Since then, Anna's home was sold by agreement of the parties. Accordingly, any claim Joseph or his estate had to the home is moot.

## II.

Heine first argues that Judge Wolfson abused his discretion by determining that Joseph must accept a cash distribution from the Estate rather than an in kind distribution. However, she does not point to any specific personal property that Joseph should have received in kind. Nevertheless, her argument lacks merit.

"Remedies available to courts of equity 'are broad and adaptable.'" In re Estate of Hope, 390 N.J. Super. 533, 541 (App. Div.) (quoting In re Mossavi, 334 N.J. Super. 112, 121 (Ch. Div. 2000)), certif. denied, 191 N.J. 316 (2007). "While equitable discretion is not governed by fixed principles and definite rules, '[i]mplicit [in the exercise of equitable discretion] is conscientious judgment directed by law and reason and looking to a just result.'" Ibid. (quoting State v. Madan, 366 N.J. Super. 98, 109-10 (App. Div. 2004)).

"A trial court's rulings on discretionary decisions are entitled to deference and will not be reversed on appeal absent a showing of an abuse of discretion involving a clear error in judgment." Ibid. (citations omitted). "[A]n abuse of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). We discern no abuse of discretion here.

In disputes over the distribution of the assets of an estate, "[w]e first look to the language of the will to determine if the testator expressed an intent as to how the property should be distributed." In re Estate of Hope, supra, 390 N.J. Super. at 539 (citation omitted). Here, Anna's will directed Laszlo "to sell any property" and "pay over the proceeds" to the beneficiaries. Anna clearly expressed her intent that all of her property should be sold and the proceeds distributed in cash, not in kind. Because Anna's will did not authorize in kind distributions, Judge Wolfson correctly determined that Joseph must accept a cash distribution from the Estate.

A-5576-14T2

In any event, in kind distributions are only permitted where:

> The person entitled to the payment has not demanded payment in cash;
>
> The property distributed in kind is valued at fair market value as of the date of its distribution; and
>
> No residuary devisee has requested that the asset in question remain a part of the residue of the estate.
>
> [N.J.S.A. 3B:23-1(b).]

Laszlo demanded payment in cash, and Joseph never made a valid fair market offer. Accordingly, an in kind distribution could not be made here.

### III.

Heine next argues that Judge Wolfson erred in denying Joseph's motion on short notice to compel discovery. We disagree.

We generally defer to the trial court's decision regarding discovery matters absent an abuse of discretion or mistaken understanding of the applicable law. Pomerantz Paper Corp. v. New Comty. Corp., 207 N.J. 344, 371 (2011); see also Pressler & Verniero, Current N.J. Court Rules, comment 4.6 on R. 2:10-2 (2017). There was no abuse of discretion in the denial of Joseph's motion.

Rule 1:6-3(a) provides as follows:

> Other than an ex parte motion and except as otherwise provided by Rule 4:46-1 (summary

> judgment) and <u>Rule</u> 5:5-4(c) (post judgment
> motions), a notice of motion shall be filed
> and served not later than [sixteen] days
> before the specified return date unless
> otherwise provided by court order, which may
> be applied for ex parte.

Under <u>Rule</u> 1:6-3(a), Joseph's motion was untimely.  Although a party may seek relief from the sixteen-day time requirement, Joseph did not do so here.  He merely filed the tardy motion on the eve of trial without seeking prior approval and without an explanation for his delay.  <u>See</u> <u>Shulas v. Estabrook</u>, 385 <u>N.J. Super.</u> 91, 94 n. 1 (App. Div. 2006).

Nonetheless, Judge Wolfson correctly found that Joseph's request for a list of all bills that remained to be paid was irrelevant to Laszlo's removal as executor.  The judge was not required to compel discovery of irrelevant evidence.

IV.

In her final argument, Heine rehashes the discovery and in kind distribution issues, and argues that Judge Wolfson erred in awarding counsel fees.

Judge Wolfson entered a final judgment dismissing Joseph's two complaints with prejudice and discharging the first lis pendens.  Thereafter, Joseph ignored the judge's rulings and filed a second and third lis pendens and a petition for discovery that was based on dismissed claims.  Joseph's actions required the

10

Estate to respond and incur counsel fees. Based on Joseph's improper conduct, Judge Wolfson did not abuse his discretion in awarding the Estate counsel fees. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44 (2001).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION